

DA 08-0194

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 87

ROBIN DILDINE,

      Petitioner and Appellee,

  v.

LIBERTY NORTHWEST INSURANCE CORP.,

      Respondent/Insurer and Appellant.

APPEAL FROM:    Workers' Compensation Court,
                   Cause No. WCC 2005-1389
                   Honorable James Jeremiah Shea, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      Larry W. Jones; Law Offices of Larry Jones; Missoula, Montana

      For Appellee:

      James G. Edmiston; Edmiston & Colton; Billings, Montana

                             Submitted on Briefs:  December 31, 2008

                                   Decided:  March 24, 2009

Filed:

               _____
                            Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1    Appellant Liberty Northwest Insurance Corp. (Liberty) appeals from the Montana Workers' Compensation Court's (WCC) March 27, 2008 order granting Dildine's motion for summary judgment and denying Liberty's cross-motion for summary judgment. We affirm.

¶2    We consider the following issues on appeal:

¶3    1.    Did the WCC have jurisdiction to decide the issue of whether Dildine's counsel was entitled to attorney fees under *Lockhart*?

¶4    2.    Did the work of Dildine's attorney lead to the payment of medical benefits to Dildine?

¶5    Appellants also raise the issue of whether we should overrule our prior decision in *Lockhart v. New Hampshire Ins. Co.*, 1999 MT 205, 295 Mont. 467, 984 P.2d 744 (holding that medical benefits recovered due to the efforts of an attorney in a workers' compensation case are benefits to which an attorney fee lien can attach). As is evident from the analysis below, we decline to do so.

### FACTUAL AND PROCEDURAL BACKGROUND

¶6    Both parties agree to the following stipulated facts, as contained in the WCC decision. Dildine was employed as a laundry worker by Hospital Laundry Services (HLS) in Billings, Montana. HLS was enrolled under Compensation Plan II of the Montana Workers' Compensation Act (MWCA) and was insured by Appellant Liberty. In March 2005, Dildine's employer filed a "Montana First Report of Injury" on her

2

behalf. The section describing the accident provided "Robin L. Dildine has pain in her left shoulder that has been going on for a while, but it has gotten worse. The repetitive use of her arm and muscles has caused tears in the rot[]ary cu[ff] of her left arm."

¶7 Liberty denied Dildine's claim in March 2005 in a letter from Liberty's adjuster, Chris Helmer (Helmer). Dildine filed a pro se request for mediation and a mediation conference was held in June 2005. That same month, Dildine retained attorney Paul Toennis to represent her. The Department of Labor and Industry (DOL) approved his attorney retainer agreement. Then in August 2005, Dildine retained attorney James Edmiston (Edmiston) and Toennis withdrew as Dildine's counsel. DOL also approved Edmiston's attorney retainer agreement. Later that month, Edmiston sent an initial letter to Liberty's adjuster, Helmer, which contained another claim for compensation for Dildine's "left shoulder, low back, CTS" as a result of "repetitive injury." Edmiston and Helmer exchanged additional correspondence regarding the claims.

¶8 Edmiston next filed a "Petition for Hearing" with the WCC on Dildine's behalf, alleging Dildine suffered an injury arising out of, and in the course of, her employment with HLS. The petition requested, in part, that Liberty pay medical benefits under the MWCA and requested that Liberty pay attorney fees, pursuant to §§ 39-71-611, -612, MCA. Edmiston also sent a letter to Liberty regarding the applicability of an attorney fee lien, pursuant to *Lockhart* (*Lockhart* lien). *Lockhart*, 1999 MT 205, 295 Mont. 467, 984 P.2d 744. After originally disputing the claim, arguing it was an occupational disease, Liberty accepted liability for Dildine's claim. In doing so, Liberty stated its decision was

3

based on discussions between Respondent's counsel and Helmer, and was also in light of the WCC's decision in *Mack v. Montana State Fund*, 2005 MTWCC 48. Thus, because Liberty assumed liability for the claim, the only remaining issue concerned the payment of attorney fees to Edmiston. The parties submitted the issue of attorney fees, on agreed facts, to the WCC. Both parties filed motions for summary judgment and, in March 2008, the WCC ruled in favor of Dildine and awarded her *Lockhart* attorney fees. Liberty now appeals.

## STANDARD OF REVIEW

¶9 Our standard of review of the WCC's ruling on a motion for summary judgment is de novo. *Pinnow v. Montana State Fund*, 2007 MT 332, ¶ 13, 340 Mont. 217, 172 P.3d 1273. Whether a court has jurisdiction over the parties or the subject matter is a legal conclusion, which we review de novo, to determine whether it is correct. *Pinnow*, ¶ 13; *Gamble v. Sears*, 2007 MT 131, ¶ 20, 337 Mont. 354, 160 P.3d 537.

## DISCUSSION

¶10 ***Did the WCC have jurisdiction to decide the issue of whether Dildine's counsel was entitled to attorney fees under Lockhart?***

¶11 Liberty argues the WCC is a court of limited jurisdiction, only possessing the powers specifically conferred upon it by statute and therefore, because the statutes in effect at the time of Dildine's claim did not grant it specific jurisdiction over attorney fee disputes, the WCC lacked jurisdiction to award Edmiston attorney fees. According to Liberty, §§ 39-71-611, -612, MCA (2003), govern the issue of attorney fees in this case. Liberty argues that these statutes "do not authorize the WCC to award *Lockhart* attorney

4

fees and expressly prohibit[] an award of attorney fees under any theory in law or equity not expressly set forth in the attorney fee statutes; they overrule *Lockhart*." Liberty concludes that "[t]his Court should hold the WCC's jurisdiction to award attorney fees is strictly limited by the attorney fee statutes and that under those statutes it does not have jurisdiction to award *Lockhart* attorney fees . . . ."

¶12 Dildine argues the WCC has exclusive jurisdiction to resolve the attorney fee dispute, pursuant to § 39-71-2905, MCA, and that §§ 39-71-611, -612, MCA, are not the applicable statutes. She argues "[t]here is a difference between the WCC enforcing a lien for attorney fees based upon an 'Attorney Retainer Agreement' approved by the [DOL] and this Court's *Lockhart* decision, and the WCC making an award of attorney[] fees pursuant to §§ 39-71-611 or -612, MCA, when a case is *adjudicated*" (emphasis added). Dildine asserts "Liberty is confusing the difference between these two concepts . . . which leads Liberty to the incorrect conclusion that the WCC had no subject matter jurisdiction to 'award' attorney fees under the *Lockhart* decision" (emphasis omitted). Dildine argues the statutes do not apply because they clearly pertain to situations where there was "an award of additional attorney fees against the insurer by the court when cases have been *adjudicated* by the court at hearing . . . whereas *Lockhart* deals with the attachment of an attorney fee[] lien upon the claimant's medical benefits when those medical benefits have been initially denied by insurers and subsequently recovered by the claimant's attorney." Dildine also emphasizes that Liberty is not required to pay any

5

additional money, but rather the *Lockhart* lien only requires that Liberty pay Dildine the 20% out of her own medical benefits that Liberty has already agreed to pay.

¶13 The WCC's jurisdiction is set out in § 39-71-2905, MCA. That section provides that, upon satisfaction of the chapter's dispute resolution requirements and excluding certain exceptions not at issue here, "the workers' compensation judge has exclusive jurisdiction to make determinations concerning disputes under chapter 71 . . . ." According to this Court in *Lockhart*, "it is well settled that attorney fee liens attach to all compensation upon the filing of an attorney retainer agreement with the Department of Labor and Industry." *Lockhart*, ¶ 26 (citing *Kelleher Law Office v. State Compensation Ins. Fund*, 213 Mont 412, 416, 691 P.2d 823, 825 (1984)). And the term "compensation" includes medical benefits paid. *Lockhart*, ¶ 25.

¶14 In *Kelleher* this Court held that the jurisdiction of the WCC goes beyond "the minimum determination of the benefits payable to an employee" and, furthermore, the "extended jurisdictional authority of the [WCC] includes payment of attorney[] fees and related costs." *Kelleher*, 213 Mont. at 415, 691 P.2d at 824-25. In *Pinnow*, this Court reaffirmed the holding in *Kelleher* and held the WCC has jurisdiction to decide a question regarding attorney fees. *Pinnow*, ¶ 35.

¶15 The "Attorney Retainer Agreement" drafted by the DOL and signed by Dildine and Edmiston provides that Edmiston's attorney fee shall be taken from "the amount of additional compensation payments the claimant receives due to the efforts of the attorney." An attorney fee lien is created by § 37-61-420(2), MCA, and attaches to all

6

compensation benefits, including medical benefits, upon the filing of an attorney retainer agreement with the DOL. *Kelleher*, 213 Mont. at 416, 691 P.2d at 825 (1984). The WCC has jurisdiction to decide a *Lockhart* lien issue because it is a dispute pertaining to benefits as contemplated in § 39-71-2905, MCA. The attorney fee at issue is simply 20% of the medical compensation benefits already owed to Dildine. Thus, it is clear that the issue of payment of Edmiston's attorney fee is within the District Court's jurisdiction to decide.

¶16 Liberty also argues that § 39-71-611, MCA (2003), governs the instant case. We disagree. This statute applies to a situation where an insurer denies liability for a claim and "the claim is later adjudged compensable by the workers' compensation court . . . ." Here, Dildine's claim was not adjudged compensable by the WCC. Rather, Liberty accepted liability for the claim.

¶17 Because we conclude the WCC had jurisdiction to determine the issue of attorney fees, the remaining issue is whether the actions of Dildine's attorney led to the payment of medical benefits, as prescribed by *Lockhart*.

¶18 ***Did the work of Dildine's attorney lead to the payment of medical benefits to Dildine?***

¶19 Liberty argues there are two conflicting standards contained within the *Lockhart* decision—one basing the attorney fee on the "benefits recovered due to the efforts of the attorney" and the other basing the fee on the "amount of disputed medical benefits ultimately paid by the insurer." Liberty seems to argue, although it is not entirely clear, that Dildine is not entitled to attorney fees under either of these "standards," which,

according to Liberty, are distinct. In reaching this conclusion, Liberty asserts Dildine is not entitled to attorney fees under the "efforts of the attorney" standard because "Liberty accepted liability based on its own examination of the facts and case law" (as opposed to efforts by Edmiston). Liberty argues Dildine is also not entitled to attorney fees under the standard of "medical benefits paid while there is a Department attorney fee agreement on file and approved" because this standard is "irrespective of the efforts of the attorney."

¶20 Dildine counters stating that her "medical benefits were obtained through her attorney's efforts, and he is entitled to charge the standard fee for those efforts based upon the approved Attorney Retainer Agreement." Dildine further argues that "*Lockhart* and the standard [DOL] approved attorney retainer agreement provide that receipt of attorney[] fees is contingent upon denial by the insurer of medical benefits which are then obtained due to the efforts of the attorney." Dildine concludes, "[t]hat is exactly what occurred here, and the WCC was correct in finding those facts." Dildine further argues "Liberty wants the attorney's right to charge fees to hinge *not* upon the attorney's efforts, but upon the insurer's motivations for first denying medical benefits . . . . The insurer's motivations are not a proper basis for deciding the attorney's entitlement to a fee."

¶21 Edmiston's efforts in this case included corresponding with Helmer regarding Dildine's claims and providing him with the necessary information and documents, filing a petition for hearing with the WCC when Liberty denied Dildine's claim and corresponding with Liberty regarding the applicability of a *Lockhart* lien. Additionally, the stipulated facts state that "Respondent accepted liability for Petitioner's claim, stating

8

that its decision was based on discussions between Respondent's counsel and its claims adjuster, Helmer, and in light of this Court's decision in *Mack*."

¶22   Liberty attempts to argue that its reversal of its initial denial of Dildine's claim was not based on any efforts by Edmiston but rather "on its own examination of the facts and case law." We find this argument to be without merit and hold that Edmiston's efforts, if not exclusively then largely, led to Liberty's acceptance of liability for Dildine's claim. Liberty also analogizes the current facts to *Montana Contractor Comp. Fund v. Liberty Northwest Insur. Corp.* (*Rusco*), 2003 MTWCC 54, § 24, where the WCC held that it was "not persuaded that the contribution of the claimant's attorneys was anything more than initiating a process . . . and setting in motion a claim investigation necessary to determine liability and the benefits due claimant." Liberty made this same argument before the WCC and the WCC found that "[u]nlike *Rusco*, it is clear that the efforts put forth by Edmiston in this case were more than simply 'initiating the process' or filling out the initial claim forms." We agree with the WCC that Edmiston's efforts went beyond just initiating a process or filling out claim forms. The WCC was correct in determining that, pursuant to *Lockhart*, Edmiston was entitled to the 20% attorney fee currently being withheld by Liberty.

**CONCLUSION**

¶23   The WCC has jurisdiction to decide the issue of whether Dildine's counsel was entitled to attorney fees under *Lockhart*. Furthermore, it was the work of Dildine's attorney, rather than an independent decision by Liberty, which led to the payment of

9

benefits to Dildine. Therefore, the District Court was correct in granting Dildine's motion for summary judgment and in denying Liberty's cross-motion for summary judgment.

¶24 We affirm.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ JIM RICE
/S/ JAMES C. NELSON
/S/ JOHN WARNER
/S/ PATRICIA COTTER