JUSTICE MORRIS
delivered the Opinion of the Court.
¶1 Lori Oberson, as legal guardian for Brian Musselman (Musselman), and others, (collectively Oberson), brought an action in the United States District Court for the District of Montana under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 2671-2680, alleging that the United States Forest Service (Forest Service) negligently had failed to correct or warn of a dangerous condition on the snowmobile trail where Brian Musselman was injured. Oberson and the Forest Service cross-appealed to the United States Court of Appeals for the Ninth Circuit from the judgment of the District Court following a bench trial.
¶2 The Ninth Circuit certified three questions of law to this Court pursuant to Rule 44(c) of the Montana Rules of Appellate Procedure. We accepted the following three questions in our order dated April 5, 2006:
¶3 Does the gross negligence standard of care in the snowmobile liability statute, Mont. Code Ann. § 23-2-653 (1996), violate the Montana equal protection clause, Mont. Const. art. II, § 4?
¶4 If the snowmobile liability statute’s gross negligence standard is *522 unconstitutional, does the recreational use statute’s willful or wanton misconduct standard of care, Mont. Code Ann. § 70-16-302(1) (1996), apply in its place?
¶5 If neither the snowmobile liability statute nor the recreational use statute provide an applicable standard of care, does the ordinary care standard, Mont. Code Ann. § 27-1-701, apply?
FACTUAL AND PROCEDURAL HISTORY
¶6 In February 1996 Musselman, Patrick Kalahar (Kalahar), Tim Johnson (Johnson), and Jamie Leinberger (Leinberger) were riding their snowmobiles at night on the Big Sky Trail, a trail maintained by the Forest Service on Forest Service land, outside West Yellowstone, Montana. The group came upon a sudden, unmarked, steep decline in the trail. Musselman reached the decline first and safely negotiated the hill, but stopped his snowmobile after Johnson had wrecked. Musselman dismounted from his snowmobile and began to walk across the trail when Kalahar and Leinberger roared over the hill at approximately 55 mph. One of their two snowmobiles struck Musselman in the head, causing him catastrophic brain injuries.
¶7 Oberson brought suit in federal court against the Forest Service under the FTCA. She alleged that the Forest Service negligently had failed to correct or warn of the danger posed by the hill where Musselman was injured, and that its negligence was the proximate cause of Musselman’s injuries. The Forest Service filed a third-party complaint against Leinberger, Kalahar, and Johnson, alleging that their negligence had caused Musselman’s injuries. Kalahar settled and the court entered a default judgment against Johnson. The case proceeded to trial against the Forest Service with Leinberger as the sole third-party defendant.
¶8 The Forest Service argued in pre-trial proceedings that it was immune to liability in light of the fact that its decision not to mark the hazardous hill was “discretionary” within the meaning of 28 U.S.C. § 2680(a). It also argued that §§ 23-2-651, 653-54, MCA (1995) (the snowmobile liability statute), relieved it from a duty to warn of the hazardous hill because “a snowmobile area operator has no duty to eliminate, alter, control, or lessen the risk inherent in the sport of snowmobiling,” § 23-2-653(3), MCA. The court rejected both affirmative defenses. The court concluded with respect to the latter that the hill at issue was not one of the risks “inherent in the sport of snowmobiling.”
¶9 The District Court looked next to Montana negligence law to *523 determine the substantive law governing Oberson’s FTCA claim. The court refused the Forest Service’s invitation to apply the “gross negligence” standard found in the snowmobile liability statute in light of the fact that this Court in Brewer v. Ski-Lift, Inc., 234 Mont. 109, 762 P.2d 226 (1988), had found a similar provision relating to ski area operators to violate the Equal Protection Clause of the Montana Constitution.
¶10 The court also barred the Forest Service from arguing that the “willful or wanton” conduct standard found in §§ 70-16-301, 302, MCA (1995) (recreational use statute) applied in place of the “gross negligence” provision in the snowmobile liability statute. The court concluded that the more specific snowmobile liability statute had preempted the willful or wanton standard in the recreational use statute. The court determined, in the absence of any other governing statute, that it would apply the catch-all “ordinary care” standard found at § 27-1-701, MCA. The court applied the ordinary care standard to apportion 40% of the responsibility for Musselman’s damages to the Forest Service, 10% to Musselman, and 50% to Kalahar and Leinberger jointly.
¶11 The Forest Service appealed the District Court’s determination of negligence and its refusal to apply the discretionary function exception of the FTCA. Oberson cross-appealed from the court’s liability allocation of 50% to Kalahar and Leinberger. The Ninth Circuit affirmed the District Court “in all respects except that [it left] for future resolution the determinative question of the appropriate standard of care pending the disposition “of this request for certification.”
DISCUSSION
¶12 Does the gross negligente standard of care in the snowmobile liability statute, Mont. Code Ann. § 23-2-653 (1996), violate the Montana equal protection clause, Mont. Const. art. II, §4?
¶13 Oberson challenges the provisions in the snowmobile liability statute that apply a gross negligence standard of care to snowmobile area operators. The statute provides, in relevant part, that a “snowmobile area operator is liable for death or injury to a snowmobiler or other person or property only for an act or omission that constitutes gross negligence.” Section 23-2-653(2), MCA (1995). It also provides that a “snowmobile area operator who attempts to eliminate, alter, control, or lessen the risk inherent in the sport of snowmobiling is liable only for an act or omission that constitutes gross *524 negligence.” Section 23-2-653(3), MCA (1995).
¶14 We presume that “all statutes are constitutional, and we attempt to construe them in a manner that avoids unconstitutional interpretation.” State v. Trull, 2006 MT 119, ¶ 30, 332 Mont. 233, ¶ 30, 136 P.3d 551, ¶ 30. This Court requires a party challenging a statute to prove, beyond a reasonable doubt, that the statute is unconstitutional. Trull, ¶ 30.
¶15 Oberson contends that this Court’s decision in Brewer requires us to hold that the snowmobile liability statute’s gross negligence provisions violate equal protection. This Court in Brewer held that various provisions in §§ 23-2-731 through 737, MCA (1995) (the skier responsibility statutes), violated the “constitutional guarantee of equal protection.” Brewer, 234 Mont. at 116, 762 P.2d at 231. The Court summarized the unconstitutional provisions as “prohibiting] the skier from obtaining legal recourse against an operator even if the injury is proximately caused by the negligent or even intentional actions of the operator.” Brewer, 234 Mont. at 114, 762 P.2d at 230.
¶16 The Court determined that the skier responsibility statutes sought to “protect[] the ski industry from frivolous lawsuits and liability over which the operator has no control.” Brewer, 234 Mont. at 113, 762 P.2d at 229. The Court held that “there is no rational relationship between this purpose and requiring that skiers assume all risks for injuries regardless of the cause and regardless of the presence of negligence or intentional conduct on the part of the ski area operator.” Brewer, 234 Mont. at 115, 762 P.2d at 230. The Court held that these provisions were “needlessly over broad [, going] ... far beyond the stated purposes of the statutes ....” The Court concluded that the provisions could not “pass even a minimum rationality test.” Brewer, 234 Mont. at 115, 762 P.2d at 230.
¶17 The snowmobile liability statute’s statement of purpose closely mirrors the skier responsibility statute’s statement of purpose that this Court analyzed in Brewer. Compare § 23-2-651, MCA (1995) with § 23-2-731, MCA (1979). The snowmobile liability statute’s purpose is stated fairly as “protecting [snowmobile area operators] from frivolous lawsuits and liability over which the operator has no control.” Brewer, 234 Mont. at 113, 762 P.2d at 229. Its gross negligence standard of care bears no rational relationship to this purpose for the same reasons we described in Brewer. The statute relieves snowmobile area operators of liability for their “negligent] or intentional conduct” that is, by definition, within their control. Brewer, 234 Mont. at 115, 762 P.2d at 230.
*525 ¶18 The Forest Service correctly points out that “the first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more similarly situated groups in an unequal manner.” Powell v. State Compensation Ins. Fund, 2000 MT 321, ¶ 22, 302 Mont. 518, ¶ 22, 15 P.3d 877, ¶ 22. It argues that the “legislature here treated all snowmobilers identically, and thus created no distinction or classification that warrants equal protection review.” The Forest Service attempts to distinguish this situation from skiing. It argues that the legislature was justified in treating snowmobilers as a unique class in light of the fact that snowmobilers are “unlike skiers and horeseback riders and hikers (for example),... because snowmobilers use motorized equipment for high speeds in a natural environment.” It also contends that the legislature was particularly concerned with the economic well being of snowmobiling as it has a major effect on the state’s economy.
¶19 The basic rule of equal protection “is that persons similarly situated with respect to a legitimate governmental purpose of the law must receive like treatment.” Rausch v. State Compensation Ins. Fund, 2005 MT 140, ¶ 18, 327 Mont. 272, ¶ 18, 114 P.3d 192, ¶ 18. We do not operate on a blank slate, however, regarding the appropriate classification for our equal protection analysis. We resolved the classifications at issue here in Brewer where this Court looked to the statute’s purpose in order to determine the threshold question of whether the statute created a discriminatory classification-i.e. a classification that treats two or more similarly situated groups in an unequal manner. Brewer, 234 Mont at 112-15, 762 P.2d at 228-30. This Court determined in Brewer that all inherently dangerous sports, including skiing, were similarly situated with respect to the skier responsibility statute’s purpose of immunizing area operators from liability for the inherent risks of the sport for which they provide a venue. Brewer, 234 Mont at 112, 762 P.2d at 230. The Court concluded that the skier responsibility statute “classif[ied] skiers and treat[ed] them differently than those who engage in other sports activities which are inherently dangerous.” Brewer, 234 Mont at 112, 762 P.2d at 228.
¶20 We discern no difference between the snowmobile liability statute’s purpose and the skier responsibility statute’s purpose. Both statutes seek to prevent frivolous lawsuits by immunizing area operators from the inherent risks of the sport over which the operator has no control. All operators who provide a venue for any inherently *526 dangerous sport are similarly situated with respect to the mischief these statutes propose to remedy. The snowmobile liability statute thus classifies snowmobile area operators and snowmobilers and treats them differently from other similarly situated groups. Brewer, 234 Mont at 112, 762 P.2d at 228. These other similarly situated groups, including “ski area operator[s],” § 23-2-733, MCA (1995), “persons responsible for equines,” § 27-1-725, MCA (1995), and “outfitters, guides and professional guides,” § 37-47-402, MCA (1995), operate pursuant to a general negligence standard. We fail to see how either the unique economics of the snowmobile industry or the addition of a motor distinguishes the snowmobilers from other inherently dangerous sports with respect to the snowmobile liability statute’s purpose.
¶21 The Forest Service lastly attempts to distinguish Brewer on the grounds that the Brewer Court focused on the fact that the skier responsibility statute had relieved the ski area operators of “all duties otherwise owed by a ski area operator to skiers ....” We disagree. The Brewer Court focused on the fact that the statute immunized the ski area operator from liability that was within the operator’s control-e.g. their own negligence-despite the legislature’s expressed intent to protect the area operator only from liability for risks inherent in the sport. Brewer, 234 Mont. at 115, 762 P.2d at 230; Mead v. M.S.B., Inc., 264 Mont. 465, 472, 872 P.2d 782, 787 (1994) (noting that “we concluded [in Brewer] that protecting the operators of ski areas from liability for their own negligence bore no relationship to protecting them from liability from inherent risks in the sport of skiing.”) (Emphasis added).
¶22 We conclude that Oberson has proven, beyond a reasonable doubt, that the “gross negligence” provision in § 23-2-653, MCA (1995), is “over broad,” extends “beyond” its stated purpose and fails to pass rational basis review. Brewer, 234 Mont at 115, 762 P.2d at 230; Trull, ¶ 30. The gross negligence standard of care in the snowmobile liability statute, Mont. Code Ann. § 23-2-653 (1996), violates the Montana equal protection clause, Mont. Const. art. II, § 4.
¶23 If the snowmobile liability statute’s gross negligence standard is unconstitutional, does the recreational use statute’s willful or wanton misconduct standard of care, Mont. Code Ann. § 70-16-302(1) (1996), apply in its place ?
¶24 We next determine what standard of care governs the Forest Service’s conduct in the absence of the gross negligence standard. The parties’ disagreement on this issue centers around three different statutes, all of which have a different scope of application, and all of *527 which provide a different standard of care. The snowmobile liability-statute applies a gross negligence standard to “snowmobile area operators.” The “recreational use” statute, § 70-16-302(1), MCA (1995), applies a “willful or wanton” standard to “landowners” who allow individuals to use their land, free of charge, for “recreational uses,” such as snowmobiling. Finally, § 27-1-701, MCA, applies an “ordinary care” standard to everyone, “[e]xcept as otherwise provided by law....”
¶25 The parties correctly point out that the gross negligence standard in the snowmobile liability statute would govern the actions of the Forest Service if it were constitutional, in light of the fact that the snowmobile liability statute is the most specific of the three statutes with respect to “snowmobile area operators.” See § 1-2-102, MCA (“[w]hen a general and particular provision are inconsistent, the latter is paramount to the former ....”); see also Whalen v. Montana Right To Life Ass’n, 2002 MT 328, ¶ 9, 313 Mont. 204, ¶ 9, 60 P.3d 972, ¶ 9 (“[t]his Court has repeatedly held that ‘when a general statute and a specific statute are inconsistent, the specific statute governs, so that a specific legislative directive will control over an inconsistent general provision.’ ”). The Forest Service argues, however, that the willful or wanton standard described in Montana’s recreational use statute, § 70-16-302(1), MCA (1995), should apply in the absence of the snowmobile liability statute’s gross negligence standard. It argues that “if the snowmobile statute was unconstitutional, and hence a nullity, at the time of the incident in this case,” then the recreational use statute would provide the governing standard of care in light of the fact that it represents the next most specific statute with respect to snowmobilers and snowmobile area operators. The Forest Service’s argument hinges, however, upon this Court declaring the entire snowmobile liability statute unconstitutional.
¶26 Our decision does not void the entire snowmobile liability statute. A statute “ ‘is not destroyed in toto because of an improper provision unless such provision is necessary to the integrity of the statute or was the inducement to its enactment.’ ” Montana Auto Ass’n v. Greely, 193 Mont. 378, 399, 632 P.2d 300, 311 (1981) (quoting Hill v. Rae, 52 Mont. 378, 389-90, 158 P. 826, 831 (1916)). We cannot say that removing the gross negligence standard destroys the integrity of the snowmobile liability statute in light of the fact that the legislature amended the statute in 1999, following the federal district court’s decision in Riska v. USDA, CV-96-63-BU-DWM (D. Mont. Oct 14, 1997). The federal court held that the gross negligence standard violated equal protection pursuant to our decision in Brewer. The *528 legislature’s amended version contains a general negligence standard. We likewise cannot determine that the gross negligence provision induced the legislature to enact the snowmobile liability statute when the legislature enacted the skier responsibility statute, the equine liability statute, §§ 27-1-725 through 727, MCA (1995), and the outfitter and guide liability statute, §§ 37-47-401 through 404, MCA (1995), with a general negligence standard. As a result, we strike only those provisions that apply a gross negligence standard of care to snowmobile area operators. We leave the remainder of the statute intact, including those provisions in §§ 23-2-653(1) and (3), MCA (1995), describing the duties of snowmobile area operators, and in § 23-2-654, MCA (1995), describing the responsibilities of snowmobilers.
¶27 This Court took a similar approach in Brewer, 234 Mont. at 116, 762 P.2d at 231, when we left the remainder of the skier responsibility statute in force after striking several sections of the statute as unconstitutional. The snowmobile liability statute otherwise continues to control the duties and responsibilities of the Forest Service in this case. The more general recreational use statute’s willful or wanton misconduct standard of care, Mont. Code Ann. § 70-16-302(1), MCA (1995), has no application under these circumstances.
¶28 If neither the snowmobile liability statute nor the recreational use statute provide an applicable standard of care, does the ordinary care standard, Mont. Code Ann. §27-1-701, apply ?
¶29 We address finally the question of what standard to apply to the Forest Service’s conduct now that we have declared unconstitutional the only explicit standard of care in the snowmobile liability statute. This Court faced a similar situation in Mead where the plaintiff brought a negligence claim against a ski resort for injuries that he sustained when he struck a rock outcropping while skiing. Mead, 264 Mont. at 468, 872 P.2d at 784.
¶30 The plaintiff claimed that the ski resort negligently had designed, constructed, and maintained the ski trail on which he was injured. Mead, 264 Mont. at 468, 872 P.2d at 784. The ski resort responded that its duties were limited to those duties enumerated in the 1989 skier responsibility statute. The ski resort noted specifically that the legislature had failed to list the duty of ordinary care among the duties enumerated in the statute. Mead, 264 Mont. at 471, 872 P.2d at 786. This Court determined that the general statutory duty of ordinary care, as defined in § 27-1-701, MCA, applied to ski area operators even though the skier responsibility statute enumerated no such duty. Mead, 264 Mont. at 474, 872 P.2d at 788.
*529 ¶31 Our decision at ¶¶ 13-22 to strike the gross negligence standard in the snowmobile liability statute leaves the statute in a state similar to the skier responsibility statute that we construed in Mead. The snowmobile liability statute now enumerates the duties and responsibilities of the snowmobile area operators and snowmobilers without a specified standard of care. Our holding in Mead requires, under these circumstances, that the general statutory duty of due care, set forth in § 27-1-701, MCA, provides the standard of care to govern the Forest Service’s actions in this case. Mead, 264 Mont. at 474, 872 P.2d at 788.
¶32 For the reasons set forth we answer, “yes,” “no,” and “yes,” respectively, to the three questions certified to this Court by the Ninth Circuit.
JUSTICES NELSON, COTTER and LEAPHART concur.