# FILED

March 16 2010

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 09-0507

## IN THE SUPREME COURT OF THE STATE OF MONTANA

### 2010 MT 52

TERRY BOYD,

     Petitioner and Appellant,

v.

ZURICH AMERICAN INSURANCE COMPANY,

     Respondent and Appellee.

APPEAL FROM:    Montana Workers' Compensation Court, WCC No. 2009-2279
                    Honorable James Jeremiah Shea, Presiding Judge

COUNSEL OF RECORD:

     For Appellant:

          Paul E. Toennis, Graves & Toennis, P.C., Billings, Montana

     For Appellee:

          James R. Hintz, Crowley Fleck PLLP, Billings, Montana

Submitted on Briefs:  February 17, 2010

Decided:  March 16, 2010

Filed:

_____
                        Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Zurich American Insurance Company (Zurich) moved for summary judgment on the grounds that Terry Boyd (Boyd) failed to petition the Workers' Compensation Court (WCC) within two years of Zurich's denial of workers' compensation benefits. The WCC granted Zurich's motion. Boyd appeals. We affirm.

## ISSUE

¶2 The dispositive issue on appeal is whether the WCC erred in granting Zurich's motion for summary judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 In November 2004, Terry Boyd began working as a pipefitter for TIC, a Wyoming industrial contractor. Boyd was injured in a work-related accident on January 18, 2005. TIC was insured for workers' compensation claims by Zurich. Boyd formally notified TIC of his injury on February 1, 2005, and sought initial medical attention on February 2, at which time he saw a family nurse practitioner in Fort Benton, Montana. An x-ray of his hand taken at that time revealed no breaks or dislocations.

¶4 On February 9, Boyd saw Dr. Hill, a physician in Basin, Wyoming. Boyd complained to Hill of left hand, fingers, and forearm pain. On February 23, Boyd was evaluated by PA-C Kolar of the Occupational Health and Wellness Department at Deaconess Billings Clinic, again complaining of hand and forearm pain. Upon re-evaluation by Kolar on March 2, Boyd reported increasing pain radiating up his arm and into his shoulder. Boyd submitted a First Report of Injury and Occupational Disease to the Montana Department of Labor and Industry (DOLI) on March 7, 2005. He did not

2

reference shoulder pain in the report, stating that the affected parts of his body were his left hand and fingers.

¶5     Kolar requested an occupational medicine consultation with Dr. Ross, a physician at Deaconess Billings Clinic. Ross examined Boyd and announced that Boyd had reached "maximum medical improvement with zero percent (0%) whole person impairment with regard to his left hand injury." Boyd then requested referral to a specialist and retained an attorney. The parties agreed that Dr. Rosen at the Billings Clinic would see Boyd for further evaluation. In July 2005, Boyd reported to Rosen that he had injured his shoulder and left arm in the drill accident in January 2005. Among other things, Rosen's medical notes indicate that Boyd's "work-related injury on January 18th, 2005, result[ed] in a left shoulder girdle and forearm extensor muscle strain."

¶6     In early 2006, Boyd was evaluated by Dr. Bryan, also at the Billings Clinic. Bryan asked Zurich to authorize and pay for a bone scan of Boyd's neck and shoulder. Zurich denied Bryan's request noting that Boyd's claim was for a thumb/hand injury and that it would not "accept any neck/cervical diagnosis." However, because Boyd continued seeking medical treatment for his shoulder, in June 2006, Zurich sent Boyd back to Rosen for re-evaluation. Rosen concluded that Boyd's shoulder pain was related to a cervical discectomy Boyd underwent in 1997 rather than his work-related injury.

¶7     In July 2006, Boyd saw Dr. Landon in Casper, Wyoming. He complained of pain in his shoulder and in both hands. Later that same month, Boyd saw Dr. Whipp in Lander, Wyoming. Dr. Whipp stated in his notes that based on Boyd's complaints and description of his work-related accident his shoulder and hand complaints were "probably

3

related to it." Boyd sent Whipp's medical report to Zurich. On October 27, 2006, Zurich acknowledged receipt of Whipp's records and notified Boyd that it was denying liability for his shoulder complaints as "those conditions are unrelated to the injury of January 18, 2005." In November 2006, Whipp once again saw Boyd and noted in his report that there "probably [was] a connection" between Boyd's pain and his work-related accident. Again, Whipp's report was submitted to Zurich, and on December 28, 2006, the insurer once again denied liability for Boyd's shoulder injury.

¶8 In June 2008, Boyd consulted Dr. Schneider who stated in his report that Boyd's shoulder pain was "clearly and unequivocally due to his [2005] work-related injury." Schneider reiterated this conclusion in a February 2009 letter to Boyd.

¶9 On August 14, 2008, Boyd filed a "Petition for Workers' Compensation Mediation Conference" with the DOLI. Mediation ensued, and a Mediator's report was issued on October 7, 2008. In March 2009, Zurich again denied liability for pain or injury to Boyd's shoulder. Subsequently, Boyd filed a Petition for Hearing on May 8, 2009. In June 2009, Zurich moved for summary judgment on the ground that Boyd had not filed his petition within two years of Zurich's initial denial of his claim as required by § 39-71-2905, MCA. Following a telephone conference with the parties on August 5, 2009, the WCC granted Zurich's motion for summary judgment. Boyd appeals.

¶10 This matter is governed by the Workers' Compensation Act of 2003. All statutory references are to the 2003 statutes.

**STANDARD OF REVIEW**

4

¶11 We review the WCC's ruling on summary judgment de novo. *Dildine v. Liberty Northwest Ins. Corp.*, 2009 MT 87, ¶ 9, 350 Mont. 1, 204 P.3d 729.

**DISCUSSION**

¶12 Boyd challenges the WCC's conclusions that: 1) a "dispute over liability" vis-à-vis his shoulder injury arose in June 2006, 2) this "dispute" triggered the 2-year statute of limitations provided in § 39-71-2905(2), MCA, and 3) Boyd's Petition for Hearing was not timely filed.

¶13 Boyd argues that his Petition for Hearing was timely filed under two statutes of limitations—§§ 39-71-2905(2) and 27-2-203, MCA. While these statutes have different "triggering" events, both allow a plaintiff to commence his or her action within 2 years of the specified triggering event. Section 39-71-2905, MCA, is triggered by a denial of workers' compensation benefits, and requires a claimant to seek a hearing for resolution of a dispute over benefits within 2 years after benefits are denied. Section 27-2-203, MCA, invokes the "discovery rule" and is triggered by "discovery" of a mistake giving rise to a claim.

¶14 Boyd asserts that when he began seeking medical attention for his shoulder pain and submitting his doctors' reports to Zurich, he did not then request benefits for his shoulder injury. He claims that without such a request for benefits, Zurich's "denial of benefits" throughout 2006 did not create a "dispute over liability," was irrelevant, and did not serve to trigger the statute of limitations in § 39-71-2905, MCA. He argues that Zurich did not actually deny his claim until after he submitted Schneider's medical

5

opinion in June 2008; therefore, his May 2009 Petition for Hearing was timely filed under § 39-71-2905, MCA.

¶15 Additionally, Boyd argues that the doctors he saw shortly after his accident misdiagnosed him and this misdiagnosis constituted a "mistake." He maintains that as a result of this mistake, he is entitled to bring his action under the "mistake" statute of limitations, § 27-2-203, MCA. Given that he did not "discover" the misdiagnosis until June 2008 when Schneider stated that his shoulder injury was caused by the work accident, he argues that the filing of his petition in May 2009 was well within the 2-year statute of limitations set forth in § 27-2-203, MCA. As such, his petition was timely.

¶16 Lastly, Boyd argues that he could not file a claim for workers' compensation benefits for his shoulder injury until the injury was "established by objective medical findings" (§ 39-71-407(2)(a), MCA), and "substantiated by clinical findings." Section 39-71-116(19), MCA. Boyd asserts that he could not make a claim for his shoulder injury until he received Schneider's report unequivocally linking his accident with his injury.

¶17 Zurich argues that § 39-71-2905(2), MCA, is the applicable statute of limitation because it is the "more specific" statute. Codified in the chapter addressing workers' compensation claims, § 39-71-2905, MCA, directly addresses claims brought before the WCC. Conversely, § 27-2-203, MCA, is a general statute addressing civil claims brought on the ground of fraud or mistake. Zurich concludes, however, that regardless of which statute is applied, Boyd's claim accrued in 2006 when Whipp opined the condition was

6

linked to the accident and Zurich in turn unequivocally denied liability for any shoulder complaints. This being so, his filing in May 2009 was untimely under either statute.

¶18    Zurich further submits that the discovery rule is not available to Boyd because evidence linking Boyd's shoulder condition to the accident was neither concealed nor self-concealing, and Boyd did not act diligently in pursuing his claim. Boyd first obtained "evidence" that his shoulder injury was related to the accident in 2006 when Whipp opined that the injury arose out of the accident. Therefore, even if Boyd could rely on the discovery rule in § 27-2-203, MCA, Boyd "discovered" the link in 2006, triggering the running of the statute of limitations.

¶19    Boyd put Zurich on early notice that he considered his shoulder injury part of his work-related accident claim by submitting the medical reports of various treating physicians to Zurich. Additionally, while "filing of forms . . . by the attending physician does not constitute a claim for compensation" (§ 39-71-604(1), MCA), one doctor, Dr. Bryan, actually requested authority from and payment by Zurich to conduct further diagnostic tests on Boyd's shoulder. Zurich denied Bryan's request in February or March 2006, and disclaimed any liability for Boyd's shoulder injury. This constituted Zurich's first denial of coverage for Boyd's shoulder claim. However, on appeal, Zurich invokes a denial date of October 27, 2006, when it wrote a letter to Boyd's attorney after receiving Whipp's first medical report, and explicitly denied coverage for Boyd's shoulder injury claims.

¶20    The October 27, 2006 letter firmly established a denial of benefits and the existence of a "dispute over liability," thus triggering the 2-year statute of limitations

7

contained in § 39-71-2905(2), MCA, which provides that "[a] petition for a hearing before the workers' compensation judge must be filed within 2 years after benefits are denied." Taking into account the tolling of the statute for mediation, the limitations period began to run on October 27, 2006, was tolled for 79 days for mediation, and expired on January 14, 2009. Boyd did not file his Petition for Hearing until May 2009. The WCC did not err in concluding that Boyd's filing was untimely under the applicable statute of limitations.

¶21 Next, we address Boyd's argument as to the applicability of § 27-2-203, MCA. As we have stated on numerous occasions, "[w]here one statute deals with a subject in general and comprehensive terms and another deals with a part of the same subject in a more minute and definite way, the special statute will prevail over the general statute to the extent of any necessary repugnancy between them." *Bryant v. Hall*, 157 Mont. 28, 482 P.2d 147 (1971). In *Bryant*, we held that the specific statute of limitations governing wrongful death actions controlled over the general statute of limitations applicable to a variety of actions seeking damages for real and personal property rights. *Bryant*, 157 Mont. at 33, 482 P.2d at 149-50. *See also State v. Brendal*, 2009 MT 236, ¶ 18, 351 Mont. 395, 213 P.3d 448 (When we can, we harmonize general and specific statutes to give effect to both; when we cannot, the specific statute controls.). In the case before us, § 39-71-2905, MCA, is a specific statute that establishes the limitations periods for disputes over benefits and requires that a petition for hearing be filed within 2 years of denial of benefits. The WCC did not err by applying § 39-71-2905, MCA.

¶22    Finally, we are not persuaded by Boyd's argument that he could not file his claim without Schneider's unequivocal opinion on causation. As noted above, earlier medical opinions rendered in 2006 and submitted to Zurich drew a connection between the accident and the shoulder injury. *See* Opinion, ¶¶ 7-8. In any event, we have held on repeated occasions that claimants are not required to prove causation through medical expertise or opinion. *See Plainbull v. Transamerica Ins. Co.*, 264 Mont. 120, 870 P.2d 76 (1994) and *Prillaman v. Community Med. Center*, 264 Mont. 134, 870 P.2d 82 (1994).

## CONCLUSION

¶23    For the foregoing reasons, we affirm the WCC's order of summary judgment in favor of Zurich.


                                           /S/ PATRICIA O. COTTER


We concur:


/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ BRIAN MORRIS
/S/ JIM RICE


9