DA 10-0084

IN THE SUPREME COURT OF THE STATE OF MONTANA

2010 MT 292

SHELLY WEIDOW,

       Petitioner and Appellee,

   v.

UNINSURED EMPLOYERS' FUND,

       Respondent, Third-Party Petitioner and Appellee,

   v.

BRADLEY HOWARD/HOWARD FAMILY 1995 TRUST,

       Third-Party Respondent and Appellant.

APPEAL FROM:    Workers' Compensation Court, State of Montana
                Honorable James Jeremiah Shea, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

           G. Andrew Adamek; Browning, Kaleczyc, Berry & Hoven, Helena, Montana

      For Appellee:

           Jonathan McDonald; Dix, Hunt & McDonald, Helena, Montana (Weidow)

                  Submitted on Briefs:  August 4, 2010
                           Decided:  December 30, 2010

Filed:

             _____
                          Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1 Bradley Howard (Howard), through the Howard Family 1995 Trust (Trust), appeals the Workers' Compensation Court's (WCC) refusal to dismiss Shelly Weidow's (Weidow) WCC petition as untimely. Howard also appeals the WCC's determination that Weidow's employment did not constitute "casual employment" as defined by § 39-71-116(6), MCA (2005). We affirm.

¶2 We review the following issues on appeal:

¶3 *Did the WCC correctly deny the motion to dismiss Weidow's petition as untimely when Weidow filed the petition 69 days after the mediator's report had been issued?*

¶4 *Was Weidow engaged in "casual employment," as defined by § 39-71-116(6), MCA (2005), when he worked on Howard's house?*

FACTUAL AND PROCEDURAL BACKGROUND

¶5 Weidow sustained injuries while completing work on Howard's house at the Yellowstone Club near Big Sky, Montana. Howard holds and operates much of his real and personal property, including the house where Weidow was injured, in the Trust's name. Howard serves as the sole manager of the Trust. Howard had acquired no workers' compensation insurance for Weidow at the time of the accident.

¶6 Howard purchased the Yellowstone Club property in 2004. Howard contracted with Brickowski/Northwest Timber Structures (Brickowski) to construct a house on the property. Brickowski hired Weidow in 2005 to complete trim work on the house. Brickowski's

2

workers' compensation policy provided coverage for Weidow. Howard discharged Brickowski in February or March 2006.

¶7 Howard took over the management and development of the house. He met with the remaining subcontractors, observed their work, discussed what projects remained, and directed the order in which to complete the remaining projects. Howard also fired at least two subcontractors, hired others to finish projects, and sent two employees from Howard's California corporations to work on the house.

¶8 Howard also entered an oral agreement with Weidow and Weidow's brother to complete the remaining work on the house. Weidow and his brother worked about 40 hours per week on the Howard house. Howard regularly paid Weidow $33 per hour using Trust money. The brothers had contact almost daily with Howard and reported progress on the house's construction. The brothers also monitored the other subcontractors' progress on the house and reported this information to Howard. The brothers completed trim work and other "punch list" tasks, including pouring a concrete slab, fixing an uneven floor, and realigning the track on the house's dumbwaiter.

¶9 Howard and Weidow had discussed the need for workers' compensation coverage. Howard had asked Weidow to investigate the cost of obtaining coverage. Weidow had learned that coverage would cost about $17,000. Howard told Weidow he did not want to buy that coverage because only a few months remained on the job.

¶10 Weidow nevertheless understood that Howard would "take care of" the workers' compensation coverage issue. Weidow knew that Howard managed other businesses with

3

employee payrolls and believed that he would be covered through one of those entities. Weidow worked on the house alongside two other employees of Howard's other California corporations. Howard had sent the California employees to work on the house on two occasions, once in his private jet, and once in a company truck.

¶11 Howard lives in Burbank, California. He manages and sells real estate through two different corporations. He manages about 70 residential and commercial properties through one of the corporations. He employs general maintenance workers and at least one real estate agent.

¶12 The Trust is a legally distinct entity from the two corporations that Howard operates. Howard's attorney had advised Howard to create the Trust to hold all of Howard's personal assets in order to protect them from inheritance taxes. Howard and his wife both serve as trustees. Howard pays all his personal expenses with trust money. Howard paid for the Yellowstone Club property and all its improvements, labor, and materials out of the Trust's account. Howard claimed that he had intended to use the Yellowstone Club property as a personal vacation house. Howard claimed that he never had intended to use the Yellowstone Club property as a business or rental property.

¶13 Weidow suffered injuries while working on the dumbwaiter in Howard's house on June 13, 2006. Howard had not obtained workers' compensation coverage for Weidow. As a result, Weidow filed a claim for benefits with the Uninsured Employers' Fund (UEF). UEF denied liability on November 22, 2006, based on its determination that Weidow's

employment with Howard qualified as "casual employment" as defined in § 39-71-116(6), MCA (2005).

¶14 Weidow petitioned the Department of Labor & Industry (DOL) for mediation, and the parties mediated the matter on January 4, 2007. The mediator issued and mailed the report and recommendation on January 31, 2007. The mediator recommended that the parties reach a settlement that included Weidow's lost wages and medical costs.

¶15 Weidow notified the mediator on February 21, 2007, that he accepted the recommendation and was willing to negotiate a settlement. On the same day, UEF notified the mediator that it rejected the recommendation and would continue denying benefits. Weidow filed his petition with the WCC on April 10, 2007. Sixty-nine days had passed between the mailing of the mediator's report on January 31, 2007, and Weidow's filing with the WCC on April 10, 2007.

¶16 UEF moved to dismiss Weidow's petition with the WCC. UEF claimed that UEF's denial had become final pursuant to § 39-71-520(2), MCA (2005), when 60 days had passed from the mailing of the mediator's report. Weidow opposed the motion based on his understanding that § 39-71-520(2), MCA (2005), had rendered final the mediator's recommendation that Weidow receive benefits. The WCC declared § 39-71-520(2), MCA (2005), unconstitutionally vague and denied UEF's motion to dismiss Weidow's untimely petition.

¶17 The WCC conducted a trial in May 2009. The WCC determined that Howard's use of the Yellowstone Club property, particularly its use for advantageous tax purposes, fell within

5

Howard's usual course of business. The WCC concluded that the "casual employment" exemption did not apply to Weidow's work on Howard's property. The WCC ordered UEF to pay medical benefits to Weidow and held Howard responsible for indemnifying UEF.

¶18 Howard appeals the WCC's conclusion that the casual employment exemption does not apply to Weidow's employment as well as the WCC's invalidation of § 39-71-520(2), MCA (2005). UEF has not joined this appeal.

STANDARD OF REVIEW

¶19 We review de novo the WCC's grant or denial of a summary judgment motion. *Boyd v. Zurich Am. Ins. Co.,* 2010 MT 52, ¶ 11, 355 Mont. 336, 227 P.3d 1026. We review the WCC's conclusions of law to determine whether they are correct. *Schmill v. Liberty N.W. Ins. Corp.,* 2009 MT 430, ¶ 8, 354 Mont. 88, 223 P.3d 842. We review the record to determine whether substantial credible evidence supports the court's findings of fact. *Id.* The law in effect at the time of the employee's injury establishes the employee's substantive right to benefits. *Colmore v. Uninsured Employers' Fund*, 2005 MT 239, ¶ 16, 328 Mont. 441, 121 P.3d 1007.

DISCUSSION

¶20 *Did the WCC correctly deny the motion to dismiss Weidow's petition as untimely when Weidow filed the petition 69 days after the mediator's report had been issued?*

¶21 Section 39-71-520(2)(c), MCA (2005), provides that "[i]f a settlement is not reached through mediation and a petition is not filed within 60 days of the mailing of the mediator's

6

report, the determination by the department is final." The WCC declared § 39-71-520(2), MCA (2005), unconstitutionally vague because its phrase "determination by the department" possibly could have two different meanings. The WCC noted that Title 39, Chapter 71, Part 5 refers to both UEF and the mediation unit of DOL as "the department." The WCC could not determine whether the "determination by the department" that becomes final pursuant to § 39-71-520(2), MCA (2005), referred to the mediator's recommendation favorable to Weidow, or to UEF's denial of Weidow's claim.

¶22   This Court generally presumes that all statutes are constitutional and attempts to construe them in a manner that gives effect to the legislature's intent if possible. Section 1-2-102, MCA; *Oberson v. U.S. Forest Serv.,* 2007 MT 293, ¶ 14, 339 Mont. 519, 171 P.3d 715. This Court attempts to "avoid constitutional issues whenever possible." *Sunburst Sch. Dist. No. 2 v. Texaco, Inc.*, 2007 MT 183, ¶ 62, 338 Mont. 259, 165 P.3d 1079. The WCC need not have reached the constitutionality of the statute.

¶23   The WCC should have applied the doctrine of equitable tolling. The WCC refused to apply the doctrine of equitable tolling based on its erroneous conclusion that it lacked jurisdiction to toll the procedural time bar in § 39-71-520(2), MCA (2005). The WCC concluded that *Colmore v. Uninsured Employers' Fund,* 2005 MT 239, 328 Mont. 441, 121 P.3d 1007, and *Flynn v. Uninsured Employers' Fund,* 2005 MT 269, 329 Mont. 122, 122 P.3d 1216, deprived it of jurisdiction to waive the time limit of § 39-71-520(2), MCA (2005). We overruled those cases in *Davis v. State*, 2008 MT 226, 344 Mont. 300, 187 P.3d 654, however, when we overruled "*Gray, Pena, Wells,* and *other cases*" to the extent they

7

have held that the legislature limited a court's subject matter jurisdiction. *Davis,* ¶ 23 (emphasis added). We overruled those cases in part because of the confusion their "less than meticulous" use of the term "jurisdiction" had caused. *Id.* at ¶ 22. The WCC fell into this linguistic trap and erroneously concluded it lacked "jurisdiction" to apply the doctrine of equitable tolling to the filing deadline of § 39-71-520(2), MCA (2005).

¶24 We recently clarified that equitable principles could apply to toll procedural filing deadlines during the administrative processing of claims. *BNSF Ry. Co. v. Cringle*, 2010 MT 290, ¶ 18, ___ Mont. ___, ___ P.3d ___. The court in *Cringle* had refused to hear the railroad's petition for judicial review based on its determination that the expiration of the 14-day appeal period set forth in § 49-2-505(3)(c), MCA, had deprived the court of subject matter jurisdiction. *Id.* at ¶ 9. We reversed and determined that the 14-day filing deadline constituted a procedural time bar potentially subject to tolling on equitable grounds. *Id.* at ¶ 20. We concluded that the court had jurisdiction to hear and adjudicate the issue of whether the procedural filing deadline should be tolled based on the railroad's alleged good cause for missing the deadline. *Id.*

¶25 This Court has applied the doctrine of equitable tolling to statutes of limitations. *Harrison v. Chance*, 244 Mont. 215, 228, 797 P.2d 200, 208 (1990); *Lozeau v. GEICO Indem. Co.,* 2009 MT 136, ¶ 14, 350 Mont. 320, 207 P.3d 316. This Court determined in *Harrison* that the doctrine of equitable tolling could be applied when the plaintiff had brought a case of first impression regarding the effect of new legislation on this Court's prior

8

holding and when the plaintiff reasonably had relied on this Court's prior holding. *Harrison,* 244 Mont. at 228, 797 P.2d at 208.

¶26 This Court also has applied equitable tolling to toll a statute of limitations' bar when the claimant, Lozeau, initially had filed her complaint in the wrong court. *Lozeau,* ¶¶ 18-20. We recognized in *Lozeau* that litigants face a "procedural quandary" when determining whether a Tribal Court has jurisdiction over a matter. *Id.* at ¶¶ 16-17. We determined that Lozeau pursued her claim reasonably and in good faith. *Id.* at ¶ 18. We also concluded that Lozeau's initial Tribal Court filing had put the defendant on notice and no prejudice had resulted to the defendant. *Id.* at ¶ 20.

¶27 The doctrine of equitable tolling applies to procedural time requirements such as § 39-71-520(2), MCA (2005). *See Igal v. Brightstar Info. Tech. Group, Inc.,* 51 Tex. Sup. J. 840, pp. 13-14 (Tex. 2008), citing *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S. Ct. 1127 (1982); *Irwin v. Dept. of Veterans Affairs,* 498 U.S. 89, 95, 111 S. Ct. 453, 457 (1990) (stating that time requirements in lawsuits between private litigants customarily are subject to "equitable tolling"). Procedural time bars, such as § 39-71-520(2), MCA (2005), constitute affirmative defenses subject to equitable principles and constitutional review. *Cringle*, ¶ 18 (citations omitted). As we stated in *Lozeau,* "[e]quitable tolling allows in limited circumstances for an action to be pursued despite the failure to comply with relevant statutory filing deadlines." *Lozeau,* ¶ 14.

¶28 We caution that the doctrine of equitable tolling has been applied only sparingly and warn against application of it to "what is at best a garden variety claim of excusable neglect."

9

*Irwin,* 498 U.S. at 96, 111 S. Ct. at 458.  We recognize "the importance of applying procedural bars regularly and consistently." *State v. Redcrow,* 1999 MT 95, ¶ 34, 294 Mont. 252, 980 P.2d 622.  We nevertheless reject any one-size-fits-all approach that would serve only to undermine the purpose of the equitable tolling doctrine and could deprive a plaintiff of his or her rights when such an approach would serve no policy purpose. *Burnett v. N. Y. C. RR. Co.,* 380 U.S. 424, 433-34, 85 S. Ct. 1050, 1057-58.  As we recently noted, "limitation periods are designed to ensure justice by preventing surprise, but no surprise exists when defendants are already on notice of the substantive claims being brought against them." *Stevens v. Novartis Pharms. Corp.*, 2010 MT 282, ¶ 34, ___ Mont. ___, ___ P.3d ___.

¶29     Turning to the case at hand, two factors generally emerge.  Weidow reasonably pursued his claims in good faith, and Howard had notice of Weidow's substantive claims. *Lozeau,* ¶ 18; *Stevens,* ¶ 34.  Weidow timely notified Howard of the injury and timely filed a claim with UEF for benefits.  Weidow requested mediation before DOL when UEF denied benefits.  Weidow accepted the mediator's recommendation to settle.  Weidow reasonably believed that § 39-71-520(2), MCA (2005), would render final the mediator's recommendation unless UEF appealed within 60 days.  Weidow justifiably did not understand that the statute might be read to render final UEF's denial.  Weidow continued his diligent pursuit of his claim by petitioning the WCC nine days after the filing period had expired.  The record contains no reason to suggest that the nine-day delay caused prejudice to Howard or inhibited his ability to collect evidence. *Stevens,* ¶ 34.

10

¶30 The ambiguity inherent in § 39-71-520(2), MCA (2005), justifies application of the doctrine of equitable tolling here. Section 39-71-520(2), MCA (2005), renders final a "determination by the department" upon expiration of the 60-day filing period. The statute fails to define or explain what "determination" the statute renders final. The statute also fails to define "the department." Section 39-71-116(11), MCA (2005), instructs that the "Department" means "the department of labor and industry." Both UEF and the mediation unit are branches of DOL. Title 39, Chapter 71, Part 5 of the Montana Code Annotated refers to both UEF and the mediation unit of DOL as "the department."

¶31 Here, UEF, a branch of DOL, determined that Weidow was not entitled to benefits. The mediation unit, also a branch of DOL, determined that Weidow was entitled to benefits. Weidow believed that the statute had placed the burden on UEF to appeal the mediator's recommendation and believed that the mediator's recommendation would be rendered final upon expiration of the 60-day filing period. Weidow justifiably relied on a plain reading of the statute. Weidow's failure to comply with an alternative reading of the ambiguous statute does not unravel his otherwise reasonable and good faith pursuit of his claim.

¶32 The doctrine of equitable tolling applies to toll the 60-day filing deadline in the ambiguous statute that Weidow faced in pursuit of his claim for workers' compensation benefits. The WCC correctly denied UEF's motion to dismiss Weidow's petition. We affirm the WCC's decision when it reaches the correct result even though we reject the WCC's reasoning in reaching its decision. *Narum v. Liberty N.W. Ins. Corp.,* 2009 MT 127, ¶ 31, 350 Mont. 252, 206 P.3d 964.

11

¶33    *Was Weidow engaged in "casual employment," as defined by § 39-71-116(6), MCA (2005), when he worked on Howard's house?*

¶34    The WCC concluded that Weidow's work on Howard's house did not fall within the exemption for "casual employment." Howard contends that the WCC improperly concluded that Howard's usual business activities included his use and management of the Yellowstone Club property. Weidow responds that Howard's treatment of his Montana properties as business properties, including for federal taxation purposes, negates Howard's casual employment defense.

¶35    The Workers' Compensation Act (Act) requires employers to provide workers' compensation insurance coverage for their employees, but contains an exemption for persons engaged in "casual employment." Section 39-71-401(2)(b), MCA (2005). The Act defines "casual employment" as "employment not in the usual course of the trade, business, profession, or occupation of the employer." Section 39-71-116(6), MCA (2005). The Act does not define "course of trade, business, profession, or occupation." We have interpreted "business" to mean the "habitual or regular occupation that a person [is] engaged in with a view to winning a livelihood or gain." *Colmore*, ¶ 19.

¶36    The distinction between casual employment and employment that qualifies for workers' compensation coverage requires analysis of the facts and circumstances surrounding the alleged employment. *Id*. at ¶ 22. Whether a person has a profit motive plays an important consideration in determining whether that person is operating a business. *Colmore,* ¶¶ 28, 32. We also have distinguished improvements to property that constitute

12

business and those that do not. *Id.* at ¶ 23 (citation omitted). Merely owning a house, or many houses, and maintaining, repairing, and renting the house so as to produce an income does not necessarily constitute a business. *Id.* Such activity constitutes a business, however, if it requires substantial time and labor for management and operation. *Id.*

¶37 *Colmore* involved a retired farmer from Tennessee who had purchased a ranch near Livingston, Montana. *Id.* at ¶¶ 5-6. The retired farmer, Colmore, hired his neighbor, Forgey, over four weeks to complete fencing on the Montana ranch. *Id.* at ¶ 11. Colmore paid Forgey $1800 and provided him with farm machinery for the fencing project. *Id.* Forgey died after getting caught in a fence post auger. *Id.* Colmore had not obtained workers' compensation insurance for Forgey. *Id.* at ¶ 12. Forgey's wife petitioned for death benefits with UEF. *Id.* UEF awarded death benefits to the widow. *Id.* Colmore argued on appeal that Forgey had been a casual employee and exempt from the Act. *Id.* at ¶ 1.

¶38 We rejected Colmore's casual employment argument because Colmore had hired Forgey in the course of his agricultural business. *Id.* at ¶¶ 25-27. Colmore reaped tax benefits from the Montana farming and ranching operation. *Id.* at ¶ 31. Colmore had claimed federal income tax deductions for rent, farm equipment depreciation, Montana tax payments, and other expenses incurred from repairing the ranch fences. *Id.*

¶39 We rejected Colmore's argument that he had maintained the ranch solely as a summer vacation home. *Id.* at ¶ 27. We concluded that Colmore had operated the ranch with a profit motive even though he may not have made a profit running the ranch. *Id.* at ¶ 28. Colmore evidenced his profit motive when he claimed agricultural and depreciation deductions on his

13

federal income tax return to reduce his overall income tax. *Id.* at ¶¶ 28, 31. Colmore also had leased pasture for grazing and had hired two other persons to repair and replace fences. *Id.* at ¶ 30.

¶40 The circumstances of the present case do not differ significantly. Howard purchased the Yellowstone Club lot and began developing the property. Howard hired Brickowski and others to build a house on the property. Howard elected to take over the management of the property's development when he grew dissatisfied with Brickowski's performance. Howard then managed the subcontractors' work, directed them in the order in which they were to complete their work, and supervised their progress. Howard also sent employees from California to work on the house and report on its progress. Howard retained Weidow and his bother to complete trim work and other "punch list" tasks. Howard paid the brothers hourly wages for forty hours of work per week over four months. The Weidow brothers had contact almost daily with Howard regarding the completion of the house. Howard's activity relating to the development of the Yellowstone Club property required substantial time and labor for management and operation. *Colmore,* ¶ 23.

¶41 Substantial tax evidence further supports the WCC's conclusion that Howard had operated the property with a profit motive despite his claim that he intended to use it as a personal vacation home. *Id.* at ¶¶ 28, 32. Howard listed the Yellowstone Club property on Schedule E of his federal tax returns in 2004 and 2005. Listing the property on Schedule E represents to the Internal Revenue Service that the taxpayer uses the property as business rental property. A taxpayer lists the deductible expenses of a property not held in a trade or

14

business on Schedule A. Howard acknowledged that he knew the difference between Schedule A and Schedule E. Howard removed the property from Schedule E in 2006, after this litigation began.

¶42    Howard received tax benefits for listing the Yellowstone Club property on Schedule E in 2004 and 2005. Howard increased his basis in the property by capitalizing the costs related to the development of the property. As a business property under Schedule E, Howard would have been able to take depreciation deductions. Taxpayers owning personal residential property may not claim depreciation deductions.

¶43    Howard also had acquired a condominium in Big Sky, Montana, pursuant to a like-kind exchange transaction governed by 26 U.S.C. § 1031. Howard traded real estate that he had owned in Bakersfield, California, for the condominium. The like-kind exchange transaction allowed Howard to defer any capital gain taxes that he otherwise would have realized. Howard listed the condominium as a Schedule E property.

¶44    The Internal Revenue Code required Howard to use the condominium as a rental or business property in order to obtain the tax-deferral benefits of the like-kind exchange transaction. 26 U.S.C. § 1031 (2000). Howard also has used the condominium for personal purposes and as a place to store his personal possessions. Howard testified that he eventually would trade the condominium for another business property.

¶45    Howard bought a Turbo Commander airplane. Howard reported on tax returns that he used the airplane sixty percent for business use and forty percent for personal use. Howard used the airplane to fly to and from Montana. Howard has never driven to Montana.

15

Howard took delivery of the airplane in Montana and registered the airplane under the Yellowstone Club property's address to avoid paying higher California taxes.

¶46 Howard managed all his Montana properties in the usual course of his business. The tax advantages and benefits that Howard incurred through the management of the Yellowstone Club property reveal that he operated the property with a profit motive. *Colmore*, ¶¶ 28, 32. The WCC correctly determined that Weidow was not engaged in "causal employment" for Howard at the time of his injury.

¶47 Affirmed.

/S/ BRIAN MORRIS

We Concur:

/S/ PATRICIA COTTER
/S/ MICHAEL E WHEAT
/S/ JAMES C. NELSON

Justice Jim Rice, concurring.

¶48 I concur with the Court's determination to affirm the decision of the Worker's Compensation Court, but disagree with the Court's reasoning for affirming Issue 1. The Court states that *Colmore* and *Flynn* were overruled by a statement in *Davis* that the Court was overruling " '*other cases*' to the extent they have held that the legislature limited a court's subject matter jurisdiction." Opinion, ¶ 23. Actually, the Court in *Davis* said it was

overruling "other cases to the extent they have held that the Legislature limited district courts' subject matter jurisdiction *by codifying a one-year time bar on post-conviction relief at § 46-21-102, MCA*." *Davis*, ¶ 23 (emphasis added). Nonetheless, I recognize that, regardless of its actual holding, *Davis* has become the source of the Court's power to minimize the effect of statutory time bars, however broad and undefined that power may be. *See BNSF Ry. Co. v. Cringle*, 2010 MT 290, ___ Mont. ___, ___ P.3d ___ (Rice, J., dissenting.) Apparently, other cases, yet unidentified and decided under various statutory or constitutional provisions, have likewise been overruled by *Davis*.

¶49    Here, I agree with Weidow that the 60-day provision is ambiguous and that the ambiguity caused him to delay the filing of his petition. The ambiguity is not resolved by review of the provision's legislative history. Therefore, I would conclude that the general statute of limitations for worker's compensation claims, § 39-71-2905(2), MCA, should apply and that Weidow's claim was timely filed thereunder.


/S/ JIM RICE