JUSTICE BAKER,
dissenting.
¶49 I agree with Justice Nelson that we are constrained by Citizens United to declare §13-35-227(1), MCA, unconstitutional to the extent it prohibits independent corporate expenditures for political speech. In my view, the State of Montana made no more compelling a case than that painstakingly presented in the 90-page dissenting opinion of Justice Stevens and emphatically rejected by the majority in Citizens United. Though I believe Citizens United requires us to affirm the District Court, we must in any event anticipate the consequences should the Court’s holding today be reversed. Rather than inventing distinctions in what I fear will be a vain attempt to rescue Montana’s Corrupt Practices Act, I would construe the statute in a manner to preserve what remains of its constitutionality and to further the legislature’s underlying intent to prevent corruption.
¶50 Citizens United holds unequivocally that Tn]o sufficient governmental interest justifies limits on the political speech of nonprofit or for-profit corporations.” 130 S. Ct. at 913. Just as unequivocally, however, it allows the government to impose disclaimer and disclosure requirements on political speech because, while such requirements “may burden the ability to speak, ... they ‘impose no ceiling on campaign-related activities,’ ... and ‘do not prevent anyone from speaking[.]’ ” 130 S. Ct. at 914 (citations omitted). Plaintiffs’ counsel acknowledged during oral argument that disclosure requirements are the means by which to address the State’s compelling interest in preserving the integrity of the election process. And the Amicus Curiae Brief from the Center for Competitive Politics described disclosure mandates as among the “constitutional tools” available to states in the wake of Citizens United. In light of Citizens United’s clear directive that the State cannot prohibit corporate expenditures, our *241 review and construction of the challenged statute should focus on preserving disclosure requirements as applied to such expenditures in order to protect the overriding interest in preventing corruption.
¶51 This Court attempts to construe statutes in a manner that avoids unconstitutional interpretation. Oberson v. USDA, 2007 MT 293, ¶ 14, 339 Mont. 519, 171 P.3d 715. If a law contains both constitutional and unconstitutional provisions, the Court first will examine the legislation to determine if there is a severability clause. PPL Mont., LLC v. State, 2010 MT 64, ¶ 131, 355 Mont. 402, 229 P.3d 421 (citing Finke v. State, 2003 MT 48, ¶ 25, 314 Mont. 314, 65 P.3d 576). In the absence of such a clause, the Court considers "whether the integrity of [the law] relies upon the unconstitutional provision or whether the inclusion of [the] provisions acted as inducement to its enactment.” Finke, ¶ 26. If the unconstitutional provisions are stricken, the law must be complete in itself and still capable of execution in accord with legislative intent. Finke, ¶ 26. Though "the presumption is against the mutilation of a statute,” Sheehy v. Pub. Emp. Retirement Div., 262 Mont. 129, 142, 864 P.2d 762, 770 (1993), if the offending provisions may be removed without frustrating the purpose or disrupting the integrity of the law, the Court will strike only those provisions of the statute that are unconstitutional. Mont. Auto. Ass’n v. Greely, 193 Mont. 378, 380-81, 632 P.2d 300, 302 (1981).
¶52 Plaintiffs seek a ruling invalidating subsection (1) of §13-35-227, MCA. That subsection prohibits a corporation from making “a contribution or an expenditure in connection with a candidate or a political committee that supports or opposes a candidate or a political party.” Subsection (2) of the statute, not challenged here, prohibits a person, candidate, or political committee from accepting or receiving a corporate contribution. Subsection (3) of the same statute allows ‘the establishment or administration of a separate, segregated fund to be used for making political contributions or expenditures if the fund consists only of voluntary contributions solicited from an individual who is a shareholder, employee, or member of the corporation.”
¶53 Section 13-35-227(3), MCA, when read in the context of Montana’s overall campaign finance scheme, expresses the legislature’s intent to provide citizens and shareholders with information about sources of funds used in support of candidates and ballot issues. Under Citizens United, the State clearly may not require corporate independent expenditures to come from a fund consisting only of "voluntary contributions” as the language of §13-35-227(3), MCA, now provides. Subsection (1) of the statute still could be preserved by allowing *242 corporate expenditures under that subsection to be made from a “separate segregated fund” as prescribed by subsection (3), without applying the now-invalid requirement that “the funds consisto only of voluntary contributions.”
¶54 I would therefore hold that the Commissioner constitutionally may extend Montana’s disclosure and reporting laws to independent expenditures by corporate entities made on behalf of candidates or political committees, just as the Commissioner has done for corporate expenditures on ballot issue campaigns. Without such a holding, and given that the Montana Legislature will not meet in general session prior to the next election, Montana voters may be left in the dark if § 13-35-227(1), MCA, is invalidated by the nation’s highest court.
¶55 Applying § 13-35-227(3), MCA, in a constitutionally-permitted fashion to expenditures from a corporate treasury will further the government’s interest in disclosure requirements and will not disrupt the statute’s integrity. As noted by the Majority, only part of the original Corrupt Practices Act survives in §13-35-227, MCA. Opinion, ¶ 28. The statute has been amended numerous times in its 100-year history. Subsection (3) was added in 1979. 1979 Mont. Laws ch. 404, 1011. The statute’s most recent modification was in 2003, after federal courts invalidated the law’s prohibition against corporate contributions and expenditures in ballot issue campaigns. Mont. Chamber of Com. v. Argenbright, 28 F. Supp. 2d 593, 600-01 (D. Mont. 1998), aff'd, 226 F.3d 1049, 1052 (9th Cir. 2000). Although neither the original Act nor most of its amendments have included a severability clause, applying the statute in the fashion I suggest is consistent with the Finke analysis.
¶56 Through the years, while legislative history is scant, the legislature’s palpable intent was to prevent corruption in Montana elections. Opinion, ¶¶ 22-28. Prohibition of corporate contributions has been one means to achieve that goal; disclosure has been another. State Senator Miles Romney, sponsor of the 1975 amendment that first introduced the ban on corporate spending in ballot issue campaigns, commented in part that “everyone should know who is giving how much” and statements of contributions would facilitate that knowledge. Mont. H. Jud. Comm., Hearing on SB 97, at 5 (Mar. 7, 1975). Through its various iterations, inducement for the legislation has been the legislature’s desire to prevent corruption in elections. Absent constitutional authority for an outright ban on corporate spending, prohibiting application of the “voluntary contributions” clause to expenditures made under subsection (1) will further, not *243 frustrate, the accountability that fosters prevention of corruption.
¶57 Construing the statute to preserve its requirement for a separate segregated fund from which corporate expenditures are made will facilitate disclosure under requirements promulgated by the Montana Commissioner of Political Practices. The Affidavit of Dennis Unsworth, submitted by the State before the District Court, described the disclosure process in place at the present time for corporate spending on ballot issue measures. Unsworth stated that independent expenditures from a corporate treasury to support or oppose a ballot measure must be reported on the Commissioner of Political Practices’ Form C-4. The C-4 form is for ‘incidental political committees,” which are defined in the Commissioner’s rules as “a political committee that is not specifically organized or maintained for the primary purpose of influencing elections but that may incidentally become a political committee by making a contribution or expenditure to support or oppose a candidate and/or issue.” Admin. R. M. 44.10.327(2)(c). The only other types of political committees are “principal campaign committees” and ‘independent committees,” both of which are committees specifically organized to support or oppose various candidates or issues. An independent committee includes a Political Action Committee. Admin. R. M. 44.10.327(2)(b)(i). Thus, the Commissioner’s rules treat corporate treasury expenditures as expenditures by ‘incidental committees” because the entities do not exist for the specific purpose of supporting or opposing candidates, ballot issues, or both.
¶58 The integrity and purpose of the law can be salvaged by permitting the Commissioner to apply ‘incidental committee” status to a separate fund in a corporation’s treasury from which election-related expenditures are made. This would ensure that corporate contributions are on the same footing, and are given the same public daylight, as contributions from individuals, political action committees, and political parties. See generally, §13-37-225, MCA; Admin. R. M. 44.10.321 -44.10.333.
¶59 The value of disclosure in preventing corruption cannot be understated. ‘tB]y revealing information about the contributors to and participants in public discourse and debate, disclosure laws help ensure that voters have the facts they need to evaluate the various messages competing for their attention.” Human Life of Wash., Inc. v. Brumsickle, 624 F.3d 990, 1005 (9th Cir. 2010). ‘IP]rompt disclosure of expenditures can provide shareholders and citizens with the information needed to hold corporations and elected officials *244 accountable for their positions and supporters.” Citizens United, 130 S. Ct. at 916. The Ninth Circuit has recognized the importance of Montana’s interest in disclosure in the context of ballot issue campaigns. Canyon Ferry Rd. Baptist Church of East Helena v. Unsworth, 556 F.3d 1021, 1032 (2009) (citing cases and noting disclosure requirements “may prevent ‘the wolf from masquerading in sheep’s clothing.’ ”). Regardless of the ultimate fate of Montana’s ban on corporate political expenditures, state disclosure requirements should be applied to all expenditures by corporate entities ‘in connection with a candidate or a political committee that supports or opposes a candidate or a political party.” Section 13-35-227(1), MCA.
¶60 In conclusion, I believe it is our unflagging obligation, in keeping with the courts’ duty to safeguard the rule of law, to honor the decisions of our nation’s highest Court. “Americans today accept the [United States Supreme] Court’s role as guardian of the law. They understand the value to the nation of following Court decisions,... even when they disagree with a Court decision and even when they may be right and the decisions may be wrong.” Stephen Breyer, Making Our Democracy Work: A Judge’s View 214 (Alfred A. Knopf 2010). Citizens United makes clear that a state’s outright ban on corporate political expenditures violates the First Amendment. Since § 13-35-227(1), MCA, imposes just such a ban, I respectfully dissent from the Court’s decision to uphold the statute in its entirety. I would instead uphold only those provisions necessary to ensure independent corporate expenditures properly are reported and full disclosure is made to inform citizens and shareholders of the corporation’s election-related spending.