**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

GREGORY G. GREEN; VICTORIA D.
GREEN, husband and wife; SILVER
STARR DE VARONA; JOHN ELBERT
ERVIN, husband and wife
          *Plaintiffs-Appellants,*

v.

UNITED STATES OF AMERICA,
          *Defendant-Appellee.*

No. 09-16180

D.C. No.
08-311-TUC-CKJ
08-313-TUC-JMR

OPINION

Appeal from the United States District Court
for the District of Arizona
Cindy K. Jorgenson, District Judge, Presiding

Argued and Submitted
March 9, 2010—San Francisco, California

Filed January 25, 2011

Before: Betty B. Fletcher, Richard R. Clifton and
Carlos T. Bea, Circuit Judges.

Opinion by Judge Bea;
Concurrence by Judge B. Fletcher

1561

## COUNSEL

John F. Munger, Adriane J. Parsons, Munger Chadwick, P.L.C., Tucson, Arizona, for the plaintiff-appellant.

Dennis K. Burke, Christina M. Cabanillas, Charles A. Davis, Tucson, Arizona, for the defendant-appellee.

**OPINION**

BEA, Circuit Judge:

This case presents the question whether statutory qualified immunity protects the U.S. Forest Service's ("Forest Service") failure to notify nearby private property owners that it intended to light a "backfire"[1] to fight a wildfire and its failure to notify property owners that the backfire had exceeded Forest Service boundaries near their private properties. Gregory and Victoria Green, Silver Starr De Varona, and John Elbert Ervin ("Appellants") appeal the district court's dismissal for lack of subject matter jurisdiction of their Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b), action for damages against the United States. Appellants are neighboring landowners whose property was burned as a consequence of allegedly negligent fire suppression activities conducted by the Forest Service in its efforts against the "Bullock Fire," a wildfire that was discovered burning in the Coronado National Forest in Arizona on May 21, 2002, and which ultimately burned over 30,000 acres. The district court held the United States was immune from Appellants' action because of the discretionary function exception to the FTCA. We reverse the district court because, although no statute or agency policy dictates the precise manner in which the Forest Service must act when it lights a backfire, there is no evidence in the record that the Forest Service's failure to *notify* the property owners of the backfire it lighted was susceptible to a policy analysis grounded in social, economic, or political concerns. *See Terbush v. United States*, 516 F.3d 1125 (9th Cir. 2008).

---

[1]A "backfire" is a fire set along the inner edge of a fireline to consume the fuel in the path of a wildfire or change the direction of force of the fire's convection column. *See* http://www.nwcg.gov/pms/pubs/glossary/information.htm.

## Background

On or about May 21, 2002, a wildfire was discovered burning in a remote area of the Coronado National Forest. The fire, later named the "Bullock Fire," ended up burning over 30,000 acres of land. At the outset of the Bullock Fire, the Forest Service set containment boundaries for the fire in its "Incident Objectives" that were posted for all fire fighting employees to see. In setting the containment area, the Forest Service intended to protect all of the private properties, businesses, and "Special Risk" areas (including radio towers, observatories, and other facilities) located near or within the Coronado National Forest.

Firefighters started a backfire near Appellants' private properties, and did not take any action to protect Appellants' properties then or later. The Appellants' properties were clearly marked on maps the Forest Service had, and Appellants had advised Forest Service personnel that Appellants' properties were threatened by the fire. Despite this, Appellants were not informed about the backfire or warned of the risk the backfire posed to their properties. The backfire came to exceed the desired containment area and burned Appellants' properties. Afterward, Forest Service employees admitted that Appellants' properties were not defended because the firefighters had not been informed of their existence, and thus, did not know the properties were at risk.[2]

---

[2]In their pleadings, Appellants specifically allege that the Forest Service "fail[ed] to communicate the risk [of the backfire] to the other firefighters and the [Appellants] (as property owners)." First Amended Complaint at ¶ 10. Appellants also allege the firefighters admitted that they failed to defend Appellants' properties or advise the residents about the backfire because the firefighters were not informed of the properties' existence by the Forest Service. *Id.* at ¶ 11. Appellants further alleged that if the firefighters had been told by the Forest Service of the properties' existence, "they would have taken steps to protect [Appellants'] ranches, and warned the [Appellants] of the risk posed to their ranches." *Id.* at ¶ 16. "The negligence of [the Forest Service] resulted in the total destruction of the structures, fencing, and personal property, as well as the devastation of its trees and substantial erosion of the soils and creek bank of [Appellants'] ranch." *Id.* at ¶ 2.

Under Arizona law, had the firefighters been private persons under similar circumstances, they would have been liable pursuant to Arizona Revised Statutes ("A.R.S.") § 13-1706(A) for damages realized as a direct and proximate result of their setting a fire on one's own property which then burned Appellants' properties. Pursuant to A.R.S. § 13-2404, had the firefighters been private persons, they would face liability for refusing to help extinguish the fire or for failing to protect Appellants' properties.

Appellants Gregory and Victoria Green, Silver Starr De Varona, and John Ervin filed virtually identical complaints against the United States under the FTCA, which alleged the Forest Service's negligence during its efforts to suppress the Bullock Fire damaged their properties. The cases were consolidated and the United States moved for their dismissal under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction based on the discretionary function exception to the FTCA, 28 U.S.C. § 2680(a).[3] In response, Appellants moved to amend their complaint, alleging the Forest Service set the fire for "fuel reduction purposes and not for suppression of the Bullock Fire, in blatant violation of policy and regulations." The district court held there was no evidence in the record to support Appellants' new contention, denied Appellants' motion to amend, and granted the United States' motion to dismiss on the ground the discretionary function exception shielded the United States from suit. This appeal timely followed.

**Standard of Review**

This court reviews de novo a district court's determination

---

[3]On a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), proof of jurisdictional facts may be supplied by affidavit, declaration, or any other evidence properly before the court, in addition to the pleadings challenged by the motion. *Corrie v. Caterpillar, Inc.*, 503 F.3d 974, 980 (9th Cir. 2007).

that it lacks subject matter jurisdiction under the FTCA and a district court's application of the FTCA's discretionary function exception. *Terbush*, 516 F.3d at 1125. The plaintiff has the burden of showing there are genuine issues of material fact as to whether the exception should apply, but the government bears the ultimate burden of establishing that the exception applies. *Miller v. United States*, 163 F.3d 591, 594 (9th Cir. 1998).[4]

## Analysis

**[1]** The FTCA waives the federal government's sovereign immunity for tort claims arising out of the negligent conduct of government employees and agencies in circumstances where the United States, if a private person, would be liable to the claimant under the law of the place where the act or

---

[4]In *Miller*, this court held the implementation of a government safety program with respect to fighting forest fires involved balancing competing policy interests, and thus, the discretionary function exception applied. 163 F.3d at 597. Miller sued the United States under the FTCA for the Forest Service's alleged negligent handling of a forest fire that spread from the Ochoco National Forest onto Miller's property, causing damage. *Id.* at 592. The district court granted the United States's motion for summary judgment on the ground the discretionary function exception applied. *Id.* We affirmed. *Id.* As to the first prong of the discretionary function exception, we noted there were "no specific directives that mandate specific action in a multiple fire situation." *Id*. at 595. Although there were general firefighting guidelines, those guidelines did not tell the firefighters specifically how to fight the fire. *Id.* Hence, the government had discretion to choose the methods as to how to fight the fire. As to the second prong, we held the Forest Service's discretion in choosing how to fight the fire was susceptible to public policy analysis. *Id.* at 595-96. The Forest Service manual stated its policy was to "[c]onduct fire suppression in a timely, effective, and efficient manner with a high regard for public and firefighter safety." *Id.* at 595. Accordingly, we held "[t]hese stated objectives and policies demonstrate that the Forest Service's decision regarding how to attack a fire involved balancing considerations including cost, public safety, firefighter safety, and resource damage. These considerations reflect the type of economic, social, and political concerns that the discretionary function exception is designed to protect." *Id.*

omission occurred. *Terbush*, 516 F.3d at 1128-29. However, the discretionary function exception provides an exception to the waiver of immunity from suit under the FTCA for "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). If the exception applies, immunity is reinstated.

**[2]** The discretionary function exception "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *Berkovitz*, 486 U.S. at 536. According to the Supreme Court, "[t]he basis for the discretionary function exception was Congress' desire to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Id.*

**[3]** As such, the Supreme Court has created a two-step test that governs the applicability of this exception. *Terbush*, 516 F.3d at 1129. The first step is to determine whether a federal statute, regulation, or policy mandated a specific course of action, or whether the government actor retained an element of judgment or choice with respect to carrying out the challenged action. *Id.* If the government action did involve choice or judgment, the second step is to determine "whether that judgment is of the kind that the discretionary function exception was designed to shield, namely, only governmental actions and decisions based on considerations of public policy." *Id.* (internal quotations omitted). If the challenged action satisfies both of these two prongs, that action is immune from suit—and federal courts lack subject matter jurisdiction—even if the court thinks the government abused its discretion or made the wrong choice. *Id.*

## 1.  Discretion

**[4]** Appellants do not challenge the Forest Service's decision to light the backfire. Instead, they challenge "the Forest Service's actions surrounding that decision" (*i.e.*, failure to notify Appellants of the backfire, failure to inform firefighters about and protect their properties). Appellants contend the Forest Service's actions relating to the backfire fall outside of the discretionary function exception because the Forest Service failed to adhere to requirements found in the Forest Service Manual ("Service Manual") and the Coronado Forest Fire Management Plan ("Management Plan").

An agency must exercise judgment or choice where no statute or agency policy dictates the precise manner in which the agency is to complete the challenged task. *Childers v. United States*, 40 F.3d 973, 976 (9th Cir. 1995). Although "standards and procedures outline certain requirements for fire suppression, they do not eliminate discretion because they do not tell firefighters how to fight the fire." *Miller*, 163 F.3d at 595.

**[5]** Although the record before this court does not contain the Service Manual provisions Appellants cite on appeal,[5] the language of the Service Manual that Appellants quote in their briefing does not support Appellants' claim that Forest Service regulations prescribe a particular course of action once the decision was made to light the backfire. The quotes are: (1) a line officer is responsible for ensuring "that the public and cooperators are informed of the selected alternatives [in deciding on wildfire suppression efforts]"; and (2) "FIRE

---

[5]Appellants' Complaint and Reply to Defendant's Motion to Dismiss quoted a number of Service Manual provisions, but Appellants did not attach as an exhibit the Service Manual in effect at the time of the Bullock Fire (May 2002). The district court discovered that a number of the Service Manual provisions that Appellants quoted were not in effect in May 2002; indeed, some provisions did not take effect until as late as 2005. Appellants also failed to provide this court a copy of the Service Manual in effect in May 2002.

SUPPRESSION SAFETY. All activities shall reflect a commitment to firefighter and public safety as a first priority." These quoted provisions do not prescribe a mandatory course of action, and indeed, this court has previously found very similar Forest Service fire-fighting provisions discretionary. *Miller*, 163 F.3d 591.[6]

Appellants also contend the Forest Service breached the following "Prevention Objective" of the Management Plan, dated April 2002 (one month before the Bullock Fire): "Each District will also develop and maintain annually a Wildland/Urban Interface map. This map will identify all private land within and around District boundaries . . . and will list owners of the property, telephone numbers, structures and improvements, etc." Appellants' claim fails because the development of the map is an "objective," which contains no certain date by which the objective must be completed and

---

[6]The Forest Plan cited in *Miller* outlines various "standards" that are mandatory requirements under the plan. The Millers specifically pointed to language in the plan that required employees to "(1) monitor current and recent fire reports to target specific risks; (2) apply aggressive suppression action to wildfires that threaten assets, including private property, by initial attack; (3) provide equipment outside of the fire management organization to assist in the initial attack; and (4) meet the goal of controlling the fire by directly addressing the fire on the ground and preparing an escaped fire analysis where appropriate." *Miller*, 163 F.3d at 594. Further, the Millers cited the Forest Service Mobilization Guide, which "provides that an employee must (1) report a discovered wildfire and take appropriate action until relieved; (2) not pass up an unmanned fire, even if the employee is not rated as meeting primary firefighter fitness standards; if the employee is the first qualified firefighter to arrive at the fire, (3) assume Incident Commander status until formally relieved; (4) not hesitate to use cooperator crews within the operation area; and if dispatcher, (5) assure sufficient initial attack forces are available within established time standards." *Id*. We held the Forest Plan standards and Mobilization Guide, which provide more guidance than the standards at issue here, did not eliminate discretion. *Id*.

does not "dictate[ ] the precise manner in which the agency is to complete the challenged task." *Childers*, 40 F.3d at 976.[7]

## 2.   Policy Considerations

**[6]** Even though the Forest Service retained discretion in fighting the Bullock Fire, we must consider whether that discretion involved the type of public policy judgment that the discretionary function exception is designed to shield. *Miller*, 163 F.3d at 593. The discretionary function exception protects only government actions and decisions based on social, economic, and political policy. *Id.* "The challenged decision need not be actually grounded in policy considerations, but must be, by its nature, susceptible to a policy analysis." *Id.*

In *Miller*, the Forest Service failed to contain the "Bald Butte" fire due to the unavailability of requested air and ground support when the fire was first spotted. *Miller*, 163 F.3d at 592. Shortly after the fire was spotted, the fire was declared "escaped" and the fire management officer for the local ranger district determined it was unsafe at that time to commit resources to the fire. *Id.* On-the-ground fire suppression efforts did not occur until the day after the fire was spotted. *Id.* The fire joined two other fires and crossed onto the Millers' property. *Id.*

**[7]** We held in *Miller* that the Forest Service's choices in *how to fight* a fire are "susceptible to a policy analysis grounded in social, economic, or political concerns." *Id.* at 595. Looking to the Forest Service Manual, we held the Service Manual's stated objectives and policies demonstrated:

---

[7]Moreover, the lack of a Wildland/Urban Interface map is irrelevant to Appellants' claims because the Appellants' alleged they made the Forest Service aware of their properties. De Varona's complaint states De Verona "placed numerous telephone calls to [Forest Service] employees advising of the location of the two privately owned ranches in the days just prior to the lighting of the [backfire], and as it was burning."

> [T]he Forest Service's decision regarding *how to attack a fire* involved a balancing of considerations, including cost, public safety, firefighter safety, and resource damage. These considerations reflect the type of economic, social and political concerns that the discretionary function exception is designed to protect.

*Id.* (emphasis added). We referred to two lower court decisions that held decisions regarding the *allocation of fire suppression resources* are grounded in public policy because the Forest Service is "required to balance the value of communications installations, private homes, endangered species, and other resources." *Id.* (quoting *Parsons v. United States*, 811 F. Supp. 1411, 1420 (E.D. Cal. 1992)[8] and *Defrees v. United States*, 738 F. Supp 380, 385 (D. Or. 1990)[9]). In the instant case, however, the Forest Service's decisions regarding "how

---

[8] In *Parsons*, owners of timber that was destroyed during a wildland fire in a national forest sought damages under the FTCA, alleging the negligence of various Forest Service employees during attempts to fight the fire proximately caused destruction of their property. Parsons alleged the following negligent acts, among others: failure to secure adequate resources to contain the fire; failure to implement a strategy properly to fight the fire; and inadequate communications system during the fire. The district court granted the government's motion for summary judgment on the ground the discretionary function exception applied to the fire fighters' alleged negligent acts. Specifically, the district court held (1) Parsons failed to cite an applicable mandatory directive, and the challenged actions were discretionary; and (2) the Forest Service firefighters were required to balance social and economic values to minimize damage from numerous fires.

[9] In *Defrees*, plaintiffs sued the Forest Service for the alleged negligence of firefighters in combating a wildland fire that destroyed plaintiffs' property. The Forest Service had deployed only a three-person crew to attack the fire at issue which, given high winds, proved inadequate. Other fires had been assigned a higher priority than the fire at issue. The court concluded that the discretionary function exception barred liability because:

> In establishing priorities, assigning government personnel and equipment, and deciding what private resources, if any should be used, these employees were required to make social and economic policy decisions. They were required to balance the value of communications installations, private homes, endangered species, and other resources.

*Defrees*, 811 F.Supp. at 385.

to attack a fire" and the allocation of fire suppression resources are not at issue.

**[8]** Instead, Appellants contend the Forest Service's *failure to notify* Appellants before and after the Forest Service lit the backfire is not subject to the discretionary function exception. We agree with Appellants because, unlike *Miller*, there is no evidence in the record to support the Forest Service's contention that the nature of its actions in this case—*i.e.*, its decisions when and whether to communicate directly with private citizens whose properties might have been in harm's way—are susceptible to policy analysis. There is no evidence, for example, that the Forest Service must determine how to allocate personnel during firefighting operations between contacting citizens and direct firefighting activity, or that the Forest Service must determine during firefighting operations how to allocate its communications resources between community-wide distribution (such as newspapers and radio stations) and direct contact with private citizens (such as phone calls or door-to-door contacts). If the Appellants had been notified of the proposed backfire, they might have been able to take measures to protect their properties, or at least ensured the Forest Service took measures to do so. For purposes of this appeal from a motion to dismiss, we find Appellants' pleadings adequately state such a possibility. Accordingly, and in light of the specific record in this case, we disagree with the district court's application of the discretionary function exception.

## Conclusion

**[9]** For the foregoing reasons, we reverse the district court's dismissal of Appellants' claim for lack of subject matter jurisdiction and remand for further proceedings consistent with this opinion.

**REVERSED AND REMANDED**.

B. FLETCHER, Circuit Judge, specially concurring:

I concur in the result. I write separately, however, to clarify our holding in *Miller v. United States*, 163 F.3d 591 (9th Cir. 1998), and to emphasize that the discretionary function exception does not apply to the government's failure to warn of an agency-created hazard.

I.

The majority concludes that the Forest Service's decisions regarding "how to attack a fire" and "the allocation of fire suppression resources" are susceptible to a policy analysis grounded in social, economic or political concerns, citing our decision in *Miller*. Opinion at 1573-74. I disagree with the majority's suggestion that *Miller* immunizes the government from liability for *all* decisions made in the course of fighting any fire, particularly all decisions involving "the allocation of fire suppression resources."

*Miller* involved a very different factual scenario from the one at issue here: a lightning storm in the Ochoco National Forest lit several fires spread over a wide area. 163 F.3d at 593, 595. The Forest Service was unable to send aerial fire retardants, smokejumpers or fire engines to fight one of the fires (the Bald-Butte fire) because those resources were already committed to other areas. *Id.* at 592. The district fire management officer concluded that a direct ground-based attack on the Bald-Butte fire would be ineffective, and directed Fire Service officials to find and suppress other small fires. *Id.* The Bald-Butte fire eventually joined with two other fires and destroyed the Millers' property. *Id.* at 593.

We concluded that the Forest Service's guidelines and pre-planned response levels, which dictated specific actions for Forest Service personnel to take in fighting fires, did not apply to a multiple-fire situation, where "the inevitable competition for resources dictates discretion." *Id.* at 595. Instead,

we noted that the Fire Service's Mobilization Guide specifically conferred discretion to fight a multiple-fire situation. *Id.* at 594-95.

Turning to the question of whether the Forest Service's decision not to commit resources to fighting the Bald-Butte Fire was susceptible to a policy analysis, we looked to three separate objectives and policy considerations which affected the Forest Service's decision-making process when fighting a fire:

> 5130.2-Objective. The objective of fire suppression is to suppress wildfires at minimum cost consistent with land and resource management objectives and fire management direction as stated in fire management action plans.

> 5130.3-Policy. Conduct fire suppression in a timely, effective, and efficient manner with a high regard for public and firefighter safety.

> 5131-Initial Action . . . 2. Initiate initial suppression action that provides for the most reasonable probability of minimizing fire suppression costs and resource damage, consistent with probable fire behavior, potential resource and environmental impacts, safety, and smoke management considerations.

163 F.3d at 595. We noted that "[t]hese stated objectives and policies demonstrate that the Forest Service's decision regarding how to attack a fire involved a balancing of considerations, including cost, public safety, firefighter safety, and resource damage." *Id.* These considerations, we concluded, "reflect the type of economic, social and political concerns that the discretionary function exception is designed to protect." *Id.*

Contrary to the majority's suggestion, *Miller* simply does not stand for the proposition that all of the Forest Service's decisions regarding how to fight any fire are susceptible to a policy analysis because, in fighting a fire, the Forest Service must allocate fire suppression resources.[1] *See* Opinion at 1573-74. Instead, *Miller* stands for the proposition that the Forest Service's decision not to attack one fire when faced with multiple, simultaneous fires is susceptible to policy analysis because it requires the Forest Service to balance the allocation of resources among multiple emergency situations, in addition to considering public safety, firefighter safety, resource damage, land management, environmental impacts, and efficiency. *See* 163 F.3d at 596. The allocation of resources was important in *Miller* only because in a multi-fire situation, the "inevitable competition for resources" dictated that the Fire Service exercise its discretion. 163 F.3d at 595.

Thus, I disagree with the majority's suggestion that the discretionary function exception would necessarily apply if the Forest Service had to "determine how to allocate personnel during firefighting operations between contacting citizens and directing firefighting activity" or "allocate its communications resources between community-wide distribution and direct contact with private citizens." *See* Opinion at 1574.

We have repeatedly held that the discretionary function exception does not apply to decisions based solely on the allocation of scarce resources. *See Terbush v. United States,* 516 F.3d 1125, 1134 & n.4 (9th Cir. 2008) (our "case law frowns upon the government relying solely on fiscal policy and budgetary constraints as the 'protected' policy considerations protected by the exception"); *Whisnant v. United States,* 400 F.3d 1177, 1184 (9th Cir. 2005) ("[W]e decline to permit the government to use the mere presence of budgetary concerns to

---

[1]Indeed, in this case, there is no evidence in the record that the Forest Service was unable to commit all of the necessary resources to fight the Bullock Fire before it decided to light the backfire.

shield allegedly negligent conduct from suit under the FTCA"); *O'Toole v. United States,* 295 F.3d 1029, 1037 (9th Cir. 2002) (stressing that the discretionary function exception must be construed narrowly because "[e]very slip and fall, every failure to warn, every inspection and maintenance decision can be couched in terms of policy choices based on allocation of limited resources"). Even assuming that its decision not to notify Appellants was based on the allocation of resources, the government cannot claim that the discretionary function exception applies to its actions in this case.

## II.

My reservations about the majority's analysis of *Miller* do not detract from my agreement with the majority's conclusion that the failure to notify Appellants before and after the Forest Service lit the backfire is not susceptible to a policy analysis grounded in social, economic, or political concerns. We have held that "[a] decision not to warn of a specific, known hazard for which the acting agency is responsible is not the kind of broader social, economic or political policy decision that the discretionary function exception is intended to protect." *Sutton v. Earles*, 26 F.3d 903, 910 (9th Cir. 1994) (concluding that the decision not to post speed limit due to agency-created underwater hazard was not subject to the discretionary function exception); *see also Oberson v. USDA*, 514 F.3d 989, 998 (9th Cir. 2008) (holding that the agency was not protected by the discretionary function exception when it raised the speed limit on a snowmobile trail and then failed to warn of trail conditions that would be hazardous at that speed); *Boyd v. United States,* 881 F.2d 895, 897-98 (10th Cir. 1989) (holding that the discretionary function exception does not apply to failure to warn swimmers of the dangers posed by the government's zoning decision which permitted boats in a lake area).

Where the government *creates* a danger, it must warn the public of that danger. To hold otherwise would unfairly allocate "the entire burden" of government-created dangers to the

individual, "leav[ing] him destitute or grievously harmed," and directly contravene the FTCA's liberal purposes. *Rayonier Inc. v. United States*, 352 U.S. 315, 320 (1957).

In sum, though I disagree with the majority's apparent conclusion that *Miller* extends the discretionary function exception to all government decisions regarding how to fight a fire because all such decisions involve the allocation of firefighting resources, I agree with its holding that the government's decision not to warn Appellants of its decision to light the backfire is not susceptible to a policy analysis. Thus, I concur in the result.