B. FLETCHER, Circuit Judge,
specially concurring:
I concur in the result. I write separately, however, to clarify our holding in Miller v. United States, 163 F.3d 591 (9th Cir.1998), and to emphasize that the discretionary function exception does not apply to the government’s failure to warn of an agency-created hazard.
I.
The majority concludes that the Forest Service’s decisions regarding “how to attack a fire” and “the allocation of fire suppression resources” are susceptible to a policy analysis grounded in social, economic or political concerns, citing our decision in Miller. Opinion at 1251 - 52. I dis *1253 agree with the majority’s suggestion that Miller immunizes the government from liability for all decisions made in the course of fighting any fire, particularly all decisions involving “the allocation of fire suppression resources.”
Miller involved a very different factual scenario from the one at issue here: a lightning storm in the Ochoco National Forest lit several fires spread over a wide area. 163 F.3d at 593, 595. The Forest Service was unable to send aerial fire retardants, smokejumpers or fire engines to fight one of the fires (the Bald-Butte fire) because those resources were already committed to other areas. Id. at 592. The district fire management officer concluded that a direct ground-based attack on the Bald-Butte fire would be ineffective, and directed Fire Service officials to find and suppress other small fires. Id. The Bald-Butte fire eventually joined with two other fires and destroyed the Millers’ property. Id. at 593.
We concluded that the Forest Service’s guidelines and preplanned response levels, which dictated specific actions for Forest Service personnel to take in fighting fires, did not apply to a multiple-fire situation, where “the inevitable competition for resources dictates discretion.” Id. at 595. Instead, we noted that the Fire Service’s Mobilization Guide specifically conferred discretion to fight a multiple-fire situation. Id. at 594-95.
Turning to the question of whether the Forest Service’s decision not to commit resources to fighting the Bald-Butte Fire was susceptible to a policy analysis, we looked to three separate objectives and policy considerations which affected the Forest Service’s decision-making process when fighting a fire:
5130.2- Objective. The objective of fire suppression is to suppress wildfires at minimum cost consistent with land and resource management objectives and fire management direction as stated in fire management action plans.
5130.3- Policy. Conduct fire suppression in a timely, effective, and efficient manner with a high regard for public and firefighter safety.
5131-Initial Action ... 2. Initiate initial suppression action that provides for the most reasonable probability of minimizing fire suppression costs and resource damage, consistent with probable fire behavior, potential resource and environmental impacts, safety, and smoke management considerations.
163 F.3d at 595. We noted that “[tjhese stated objectives and policies demonstrate that the Forest Service’s decision regarding how to attack a fire involved a balancing of considerations, including cost, public safety, firefighter safety, and resource damage.” Id. These considerations, we concluded, “reflect the type of economic, social and political concerns that the discretionary function exception is designed to protect.” Id.
Contrary to the majority’s suggestion, Miller simply does not stand for the proposition that all of the Forest Service’s decisions regarding how to fight any fire are susceptible to a policy analysis because, in fighting a fire, the Forest Service must allocate fire suppression resources.[1] See Opinion at 1251-52. Instead, Miller stands for the proposition that the Forest Service’s decision not to attack one fire when faced with multiple, simultaneous fires is susceptible to policy analysis because it requires the Forest Service to balance the allocation of resources among *1254 multiple emergency situations, in addition to considering public safety, firefighter safety, resource damage, land management, environmental impacts, and efficiency. See 163 F.3d at 596. The allocation of resources was important in Miller only because in a multi-fire situation, the “inevitable competition for resources” dictated that the Fire Service exercise its discretion. 163 F.3d at 595.
Thus, I disagree with the majority’s suggestion that the discretionary function exception would necessarily apply if the Forest Service had to “determine how to allocate personnel during firefighting operations between contacting citizens and directing firefighting activity” or “allocate its communications resources between community-wide distribution and direct contact with private citizens.” See Opinion at 1252.
We have repeatedly held that the discretionary function exception does not apply to decisions based solely on the allocation of scarce resources. See Terbush v. United States, 516 F.3d 1125, 1134 & n. 4 (9th Cir.2008) (our “case law frowns upon the government relying solely on fiscal policy and budgetary constraints as the ‘protected’ policy considerations protected by the exception”); Whisnant v. United States, 400 F.3d 1177, 1184 (9th Cir.2005) (“[W]e decline to permit the government to use the mere presence of budgetary concerns to shield allegedly negligent conduct from suit under the FTCA”); O’Toole v. United States, 295 F.3d 1029, 1037 (9th Cir.2002) (stressing that the discretionary function exception must be construed narrowly because “[ejvery slip and fall, every failure to warn, every inspection and maintenance decision can be couched in terms of policy choices based on allocation of limited resources”). Even assuming that its decision not to notify Appellants was based on the allocation of resources, the government cannot claim that the discretionary function exception applies to its actions in this case.
II.
My reservations about the majority’s analysis of Miller do not detract from my agreement with the majority’s conclusion that the failure to notify Appellants before and after the Forest Service lit the backfire is not susceptible to a policy analysis grounded in social, economic, or political concerns. We have held that “[a] decision not to warn of a specific, known hazard for which the acting agency is responsible is not the kind of broader social, economic or political policy decision that the discretionary function exception is intended to protect.” Sutton v. Earles, 26 F.3d 903, 910 (9th Cir.1994) (concluding that the decision not to post speed limit due to agency-created underwater hazard was not subject to the discretionary function exception); see also Oberson v. USDA, 514 F.3d 989, 998 (9th Cir.2008) (holding that the agency was not protected by the discretionary function exception when it raised the speed limit on a snowmobile trail and then failed to warn of trail conditions that would be hazardous at that speed); Boyd v. United States, 881 F.2d 895, 897-98 (10th Cir. 1989) (holding that the discretionary function exception does not apply to failure to warn swimmers of the dangers posed by the government’s zoning decision which permitted boats in a lake area).
Where the government creates a danger, it must warn the public of that danger. To hold otherwise would unfairly allocate “the entire burden” of government-created dangers to the individual, “leav[ing] him destitute or grievously harmed,” and directly contravene the FTCA’s liberal purposes. Rayonier Inc. v. United States, 352 U.S. 315, 320, 77 S.Ct. 374, 1 L.Ed.2d 354 (1957).
*1255 In sum, though I disagree with the majority’s apparent conclusion that Miller extends the discretionary function exception to all government decisions regarding how to fight a fire because all such decisions involve the allocation of firefighting resources, I agree with its holding that the government’s decision not to warn Appellants of its decision to light the backfire is not susceptible to a policy analysis. Thus, I concur in the result.

. Indeed, in this case, there is no evidence in the record that the Forest Service was unable to commit all of the necessary resources to fight the Bullock Fire before it decided to light the backfire.